XUE & ASSOCIATES, P.C.
Benjamin B. Xue, Esq.
Michael S. Romero, Esq.
1 School Street, Suite 303A
Glen Cove, NY 11542
Phone: (516) 595-8887
Fax:    (212) 219-2276
*Attorneys for Plaintiffs, proposed*
*FLSA Collective and potential Rule 23*
*Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

| | |
|---|---|
| IRENE CHOR LING MA, BERNARD LAP SHUN LEUNG, TAK Y. CHAN, and ZHUO ZHOU WU *on their own behalf and on behalf of others similarly situated,* | Case No.:    1:24-cv-07457 |
| Plaintiffs, | **29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION** |
| -against- | **COMPLAINT** |
| MAXIM INTERNATIONAL GROUP INC. D/B/A ZEN RAMEN & SUSHI, CELINA LIN, CINDY JIN, and JESSICA CHEN a/k/a JESSICA CHAN. | |
| Defendants. | |

------------------------------------------------------------------X

Plaintiffs Irene Chor Ling Ma ("Ma"), Bernard Lap Shun Leung ("Leung"),  Tak Y. Chan ("Chan"), and Zhuo Zhou Wu ("Wu") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Xue & Associates, P.C., hereby bring this complaint against Maxim International Group Inc. d/b/a Zen Ramen & Sushi ("Maxim")., Celina Lin ("Lin"), Cindy Jin ("Jin") and Jessica Chen a/k/a Jessica Chan ("Chen") (collectively "Defendants"), and allege as follows:

1

## INTRODUCTION

1.   This action is brought by Plaintiffs, on behalf of themselves as well as other employees similarly situated, against Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. §201 *et, seq.* and New York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.   Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in the pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.   Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgement interest; and/or (4) attorney's fees and costs.

4.   Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under

NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

5.  This Court has original federal question jurisdiction over this controversy under 29 U.S.C.§ 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7. From on or about June 1, 2017, through on or about August 30, 2023, Plaintiff Ma was employed by Defendants to work at the restaurant located at 150 W 36th Street, New York, NY 10018 (the "Restaurant"), whereupon Plaintiff Ma was fired. Plaintiff Ma was rehired by the Restaurant on or about October 1, 2023, where she continued to work until on or about June 26, 2024, at which point she was fired once again.

8. At all relevant times, though Plaintiff Ma was ostensibly hired as a waiter, her daily job duties included far more than just acting as wait staff. At all relevant times, her daily work comprised of additional duties not related to waiting tables, including but not limited to cleaning the bathroom, sweeping the floor, moving utensils, and preparing food, such as salads. This work outside of the scope of waiting tables comprised over 20 percent and over 2 hours of her daily

work each day.

9. From on or about January 22, 2017, through on or about August 10, 2024, Plaintiff Leung was employed by Defendants at the Restaurant.

10. At all relevant times, though Plaintiff Leung was ostensibly hired as a waiter, his daily job duties included far more than just acting as wait staff. At all relevant times, his daily work comprised of additional duties not related to waiting tables, including but not limited to cleaning the bathroom, sweeping the floor, moving utilities, and preparing food, such as salads. This work outside of the scope of waiting tables comprised over 20 percent and over 2 hours of his daily work each day.

11. From on or about April 23, 2022, through on or about November 13, 2022, Plaintiff Chan was employed by Defendants to work at the Restaurant. Plaintiff Chan was rehired by the Restaurant on or about June 13, 2023, until on or about July 19, 2023, where he had to stop working briefly due to an injury. Plaintiff Chan returned after recovering from his injuries on or about October 9, 2023, whereupon he worked until on or about February 17, 2024.

12. At all relevant times, though Plaintiff Chan was ostensibly hired as a waiter, his daily job duties included far more than just acting as wait staff. At all relevant times, his daily work comprised of additional duties not related to waiting tables, including but not limited to cleaning the bathroom, sweeping the floor, moving utilities, and preparing food, such as salads. This work outside of the scope of waiting tables comprised over 20 percent and over 2 hours of his daily work each day.

13. From on or about September 6, 2018, through on or about December 21, 2018, Plaintiff Wu was employed by Defendants to work at the Restaurant. Plaintiff Wu was rehired by Defendants on or about February 10, 2019, where he continued to work until on or about July 12,

2020, at which point he was fired in retaliation for raising complaints with Defendants concerning his unpaid sick and vacation time.

14.    At all relevant times, Plaintiff Wu was hired as a sushi chef.

## **DEFENDANTS**

**Corporate Defendant**

15.  Upon information and belief, Defendant Maxim is a domestic business corporation organized under the laws of the State of New York with a principal address at 150 W 36th Street, New York, NY 10018.

16.  Upon information and belief, Defendant Maxim is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

17.  Upon information and belief, Defendant Maxim purchased, and handled goods moved in interstate commerce.

**Owner/Operator Defendants**

18.    Upon information and belief, Defendant Lin is an officer, director, manager and/or majority shareholder or owner of the Corporate Defendant and being amongst the ten largest shareholders and/or LLC members, is individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

19.    Upon information and belief, Defendant Lin is a part-owner of, liquor license principal for, and an active, day-to-day manager of Corporate Defendant and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions

of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Restaurant.

20.     Defendant Lin acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Defendant Maxim.

21.     Defendant Lin is an employer of Plaintiffs within the meaning of the FLSA and NYLL.

22.     Upon information and belief Defendant Jin is an officer, director, manager and/or majority shareholder or owner of Corporate Defendant and being amongst the ten largest shareholders and/or LLC members, is individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

23.     Upon information and belief, Defendant Jin is a part-owner of, and an active, day-to-day manager at the Restaurant and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Restaurant.

24.     Defendant Jin acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Maxim.

25.     Defendant Jin is an employer of Plaintiffs within the meaning of the FLSA and NYLL.

26. Upon information and belief Defendant Chen is an officer, director, manager and/or majority shareholder or owner of Corporate Defendant and being amongst the ten largest

shareholders and/or LLC members, is individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

27. Upon information and belief, Defendant Chen is a part-owner of, and an active, day-to-day manager at the Restaurant and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Restaurant.

28. Defendant Chen acted intentionally and maliciously and is an employer pursuant to FLSA, 29U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Maxim.

29. Defendant Chen is an employer of Plaintiffs within the meaning of the FLSA and NYLL.

## **STATEMENT OF FACTS**

30. There are approximately 18 persons working at the Restaurant at any one time, including approximately: 4 cashiers, 4-5 staff working at the sushi bar, 4-5 kitchen staff, 1 takeout person, and 4 wait staff.

31. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

32. Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

33. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

34. Wait staff at the Restaurant, including Plaintiffs, were not paid at least the New York minimum wage for each hour worked, even if their tips did not exceed the Federal and New York minimum wages.

35. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

36. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs with 1 hour of paid safe and sick leave each calendar year for every 30 hours worked, up to 40 hours, in violation of Labor Law § 196-b.

37. Upon information and belief, at all relevant times Defendants improperly withheld portions of Plaintiffs' tips as penalties, and illegally kept these deductions for themselves.

38. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

39. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

40. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

41. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

42. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

43. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

**Plaintiff Irene Chor Ling Ma**

44. From on or about June 1, 2017, through on or about August 30, 2023, Plaintiff Ma was employed by Defendants to work at the Restaurant, whereupon Plaintiff Ma was fired.

45. Plaintiff Ma was rehired by the Restaurant on or about October 1, 2023, where she continued to work until on or about June 26, 2024, at which point she was fired once again.

46. At all relevant times, though Plaintiff Ma was ostensibly hired as a waiter, her daily job duties included far more than just acting as wait staff.

47. At all relevant times, her daily work comprised of additional duties not related to waiting tables, including but not limited to cleaning the bathroom, sweeping the floor, moving utilities, and preparing food, such as salads. This work outside of the scope of waiting tables comprised over 20 percent and over 2 hours of her daily work each day.

48. At all relevant times, Plaintiff Ma did not have a set schedule, with routine changes in schedule made with very little notice. However, on average, Plaintiff Ma would work 2.5-4 days per week, however it was not uncommon for her to work 5-6 days per week.

49. At all relevant times Plaintiff Ma's worked from approximately 11am – 11pm, with a 1-hour lunch break, for a total of 11 hours per day.

50. At all relevant times, Plaintiff worked approximately 28-48 hours per week.

51.  Though Defendants maintained a time card system, at all relevant times, Defendants maintained a practice of falsifying time records. Each day, when Plaintiff Ma took a lunch break, Plaintiff Ma was forced to punch out, and would not be permitted to punch back in until two to two-and-a-half hours later. However, despite not being permitted to punch back in for two-and-a-half hours, Plaintiff Ma was back to work after only a one-hour break.

52.  Additionally, on occasions Plaintiff Ma would be required to fill in for other peoples' shifts. On such occasions, Defendants had a practice of forcing Plaintiff Ma to punch in for the employee whose shift she would be covering, rather than punch in for herself.

53.  Further, at all relevant times, despite shifts lasting until 11pm each night, Plaintiff Ma was forced to clock out at 10:30pm each night.

54.  As a result, at all relevant times, the time card records underreport Plaintiff Ma's hours by at least 2 hours each day, and, on occasions where Plaintiff Ma was required to cover another employees' shifts, would underreport her hours for entire days at a time.

55.  During the entirety of Plaintiff Ma's employment, Defendants did not notify her that they were taking a tip credit against his wages.

56.  During the entirety of Plaintiff Ma's employment, Defendants had an unlawful practice of withholding a portion of the tips rightfully belonging to Plaintiff Ma as a penalty if Plaintiff Ma was late.

57.  Further, during the entirety, of Plaintiff Ma's employment, Defendants had an unlawful practice of improperly deducting from Plaintiff Ma's wages any incorrect orders Plaintiff Ma served to customers, or any accidental property damage caused by Plaintiff Ma. Defendants would also force all employees, including Plaintiff Ma, to make monthly contributions to a fund to clean the Restaurant.

58. In 2017, Plaintiff Ma was paid an hourly rate of $7.50 per hour.

59. In 2018, Plaintiff Ma was paid an hourly rate of $8.65 per hour.

60. In 2019, Plaintiff Ma was paid an hourly rate of $10.00 per hour.

61. From 2020 through 2024, Plaintiff Ma was paid an hourly rate of $10.00 per hour

62. At all relevant times, Plaintiff Ma was not properly paid overtime pay for overtime work.

63. Throughout her employment, Plaintiff Ma was not compensated at least at one- and one-half times her promised hourly wage for all hours worked above forty (40) in each workweek.

64. Throughout her employment, Plaintiff Ma was not given an accurate statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

65. Throughout her employment, Plaintiff Ma was not properly compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

66. Throughout her employment, Defendants would regularly fail to promptly pay Plaintiff Ma any wages owed, with payments often being made weeks late.

67. Throughout her employment, Plaintiff Ma was not provided with 1 hour of paid safe and sick leave each calendar year for every 30 hours worked, up to 40 hours.

**Plaintiff Bernard Lap Shun Leung**

68. From on or about January 22, 2017, through on or about August 10, 2024, Plaintiff Leung was employed by Defendants at the Restaurant..

69.    At all relevant times, though Plaintiff Leung was ostensibly hired as a waiter, his daily job duties included far more than just acting as wait staff.

70.    At all relevant times, his daily work comprised of additional duties not related to waiting tables, including but not limited to cleaning the bathroom, sweeping the floor, moving utilities, and preparing food, such as salads. This work outside of the scope of waiting tables comprised over 20 percent and over 2 hours of his daily work each day.

71.  At all relevant times, Plaintiff Leung did not have a set schedule, with routine changes in schedule made with very little notice. However, on average, Plaintiff Leung would work 3.5-4 days per week.

72.  At all relevant times Plaintiff Leung worked from approximately 11am – 11:15pm, with a 1-hour lunch break, for a total of 11.25 hours per day.

73.  At all relevant times, Plaintiff Leung worked an average of 38.5-45 hours per week.

74.  Though Defendants maintained a time card system, at all relevant times, Defendants maintained a practice of falsifying time records. Each day, when Plaintiff Leung took a lunch break, Plaintiff Leung was forced to punch out, and would not be permitted to punch back in until two hours later. However, despite not being permitted to punch back in for two hours, Plaintiff Leung was back to work after only a one-hour break.

75.  Further, at all relevant times, despite shifts lasting until 11pm each night, Plaintiff Leung was forced to clock out at 9:30pm each night.

76.  As a result, at all relevant times, the time card records underreport Plaintiff Leung's

hours by at least 2.5 hours each day.

77.  During the entirety of Plaintiff Leung's employment, Defendants did not notify him that they were taking a tip credit against his wages.

78.  During the entirety of Plaintiff Leung's employment, Defendants had an unlawful practice of withholding a portion of the tips rightfully belonging to Plaintiff Leung as a penalty if Plaintiff Leung was late.

79.  Further, during the entirety of Plaintiff Leung's employment, Defendants had an unlawful practice of improperly deducting from Plaintiff Leung's wages any incorrect orders Plaintiff Leung served to customers, or any accidental property damage caused by Plaintiff Leung. Defendants would also force all employees, including Plaintiff Leung, to make monthly contributions to a fund to clean the Restaurant.

80.  In 2017, Plaintiff Leung was paid an hourly rate of $7.50 per hour.

81.  In 2018, Plaintiff Leung was paid an hourly rate of $8.65 per hour.

82.  In 2019, Plaintiff Leung was paid an hourly rate of $10.00 per hour.

83.  From 2020 through 2024, Plaintiff Leung was paid an hourly rate of $10.00 per hour.

84.  At all relevant times, Plaintiff Leung was not properly paid overtime pay for overtime work.

85.  Throughout his employment, Plaintiff Leung was not compensated at least at one- and one-half times her promised hourly wage for all hours worked above forty (40) in each workweek.

86.  Throughout his employment, Plaintiff Leung was not given an accurate statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for

each pay day.

87.   Throughout his employment, Plaintiff Leung was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

88.   Throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Leung any wages owed, with payments often being made weeks late.

89.   Throughout his employment, Plaintiff Leung was not provided with 1 hour of paid safe and sick leave each calendar year for every 30 hours worked, up to 40 hours.

**Plaintiff Tak Y Chan**

90. From on or about May 1, 2022, through on or about November 11, 2022, Plaintiff Chan was employed by Defendants to work at the Restaurant. Plaintiff Chan was rehired by the Restaurant on or about June 1, 2023, until on or about July 21, 2023, where he had to stop working briefly due to an injury. Plaintiff Chan returned after recovering from his injuries on or about October 1, 2023, whereupon he worked until on or about February 17, 2024.

91.   At all relevant times, though Plaintiff Chan was ostensibly hired as a waiter, his daily job duties included far more than just acting as wait staff.

92.   At all relevant times, his daily work comprised of additional duties not related to waiting tables, including but not limited to cleaning the bathroom, sweeping the floor, moving utilities, and preparing food, such as salads. This work outside of the scope of waiting tables comprised over 20 percent and over 2 hours of his daily work each day.

93.   At all relevant times, Plaintiff Chan did not have a set schedule, with routine changes in schedule made with very little notice. However, on average, Plaintiff Chan would work 2.5-4 days per week.

94. At all relevant times Plaintiff Chan worked from approximately 11am – 11pm, with a 1-hour lunch break, for a total of 11 hours per day.

95. At all relevant times, Plaintiff Chan worked an average of 27.5-44 hours per week.

96. Though Defendants maintained a time card system, at all relevant times, Defendants maintained a practice of falsifying time records. Each day, when Plaintiff Chan took a lunch break, Plaintiff Chan was forced to punch out, and would not be permitted to punch back in until one hour later. However, despite not being permitted to punch back in for one hour, Plaintiff Chan was back to work after only a 30-minute break.

97. Further, at all relevant times, despite shifts lasting until 11pm each night, Plaintiff Chan was forced to clock out at 10:30pm each night.

98. As a result, at all relevant times, the time card records underreport Plaintiff Chan's hours by at least 1 hour each day.

99. During the entirety of Plaintiff Chan's employment, Defendants did not notify him that they were taking a tip credit against his wages.

100. During the entirety of Plaintiff Chan's employment, Defendants had an unlawful practice of withholding a portion of the tips rightfully belonging to Plaintiff Leung as a penalty if Plaintiff Chan was late.

101. Further, during the entirety of Plaintiff Chan's employment, Defendants had an unlawful practice of improperly deducting from Plaintiff Chan's wages any incorrect orders Plaintiff Chan served to customers, or any accidental property damage caused by Plaintiff Chan. Defendants would also force all employees, including Plaintiff Chan, to make monthly contributions to a fund to clean the Restaurant.

102. At all relevant times, Plaintiff Chan was paid an hourly rate of $10.00 per hour.

103. Plaintiff Chan was not paid at all for his last week of work.

104. Throughout his employment, Plaintiff Chan was not given an accurate statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

105. Throughout his employment, Plaintiff Chan was not properly compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

106. Throughout his employment, Plaintiff Chan was not provided with 1 hour of paid safe and sick leave each calendar year for every 30 hours worked, up to 40 hours.

**Plaintiff Wu**

107. From on or about September 6, 2018, through on or about December 21, 2018, Plaintiff Wu was employed by Defendants to work at the Restaurant. Plaintiff Wu was rehired by Defendants on or about February 10, 2019, where he continued to work until on or about July 12, 2020, at which point he was fired in in retaliation for raising complaints with Defendants concerning his unpaid sick and vacation time.

108. Plaintiff Wu was hired as a sushi chef.

109. From on or about September 6, 2018, through on or about December 21, 2018, Plaintiff Wu would work approximately 4 days a week. During this period of time, he would work from approximately 10:30am – 10:00pm, with a 1-hour lunch break, for a total of 10.5 hours per day. During this period of time, he worked approximately 42 hours per week.

110. From on or about September 6, 2018, through on or about December 21, 2018, Plaintiff Wu was paid at a flat daily rate of $150 per day.

111. From on or about February 10, 2019, through on or about June 9, 2019, Plaintiff Wu would work approximately 5 days a week. During this period of time, he would work from approximately 10:30am – 10:00pm, with a 1-hour lunch break, for a total of 10.5 hours per day. During this period of time, he worked approximately 52.5 hours per week.

112. From on or about February 10, 2019, through on or about June 9, 2019, Plaintiff Wu was paid a flat daily rate of $160 per day.

113. From on or about June 10, 2019, through on or about March 16, 2020, Plaintiff Wu would work approximately 5 days a week. During this period of time, he would work from approximately 10:30am – 10:00pm, with a 2-hour lunch break, for a total of 9.5 hours per day. During this period of time, he worked approximately 47.5 hours per week.

114. From on or about June 10, 2019, through on or about March 16, 2020, Plaintiff Wu was paid a flat daily rate of $160 per day.

115. From on or about March 17, 2020, through on or about July 12, 2020, Plaintiff Wu would work approximately 6 days per week. During this period of time, he would work from approximately 10:30am – 9:00pm with a 2-hour lunch break, for a total of 8.5 hours each day, however, on average 2 days per week during this period he would need to stay an extra half an hour late to help and on those days would work for 9 hours. During this period of time, he worked approximately 52 hours per week.

116. From on or about March 17, 2020, through on or about July 12, 2020, Plaintiff Wu was paid a flat daily rate of $170 per day.

117. At all relevant times, Plaintiff Wu was not properly paid overtime pay for overtime

work.

118. Throughout his employment, Plaintiff Wu was not properly compensated at least at one-and-one-half times her promised hourly wage for all hours worked above forty (40) in each workweek.

119. Throughout his employment, Plaintiff Wu was not given an accurate statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

120. Throughout his employment, Plaintiff Wu was not properly compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

121. Throughout his employment, Plaintiff Wu and Defendants had an agreement whereby Plaintiff Wu was promised one week of paid vacation per year, which Defendants refused to give him.

122. Additionally, Throughout his employment, Plaintiff Wu was not provided with 1 hour of paid safe and sick leave each calendar year for every 30 hours worked, up to 40 hours.


## COLLECTIVE ACTION ALLEGATIONS

123.    Plaintiffs bring this action individually and as class representatives on behalf of all other and former non-exempt employees who have been or were employed by Defendants for up to the last three (3) years and 228 days, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at the minimum hourly

rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members")[1].

## CLASS ACTION ALLEGATIONS

124.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years and 228 days before the filing of the Complaint in this case as defined herein (the "Class Period")[2].

125.    All said persons, including Plaintiffs, are referred to herein as the "Class."

126.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

**Numerosity**

127.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there

---

[1] The additional 228 days represents the tolling of the statute of limitations as a result of the executive orders issued in 2020 as a response to the COVID-19 pandemic.
[2] The additional 228 days represents the tolling of the statute of limitations as a result of the executive orders issued in 2020 as a response to the COVID-19 pandemic.

are more than forty (40) members of the class.

**<u>Commonality</u>**

128.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.        Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.        Whether Plaintiffs and Class members are promised and not paid at their promised hourly wage;

c.        Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

d.        Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

e.        Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

f.        Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

g.        Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

h.        Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class

on each payday; and

i.         At what common rate, or rates subject to common method of calculation was and are Defendants required to pay the Class members for their work.

**Typicality**

129.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

**Adequacy**

130.   Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

**Superiority**

131.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

132.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights

out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

STATEMENT OF CLAIMS

<strong>COUNT I</strong>

<strong>[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage/Unpaid Wages Brought on behalf of the Plaintiffs and the FLSA Collective]</strong>

133.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

134.   At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the similarly situated collective action members, in full for some or all of the hours they worked.

135.   Furthermore, upon information and belief, at all relevant times, Defendants had a policy of improperly withholding portions of Plaintiffs' wages, as a penalty to Plaintiffs.

136.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

137.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Action Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action Members.

## COUNT II.

**[Violation of New York Labor Law—Failure to Pay Minimum Wage/ Unpaid Wages**

**Brought on behalf of Plaintiffs and Rule 23 Class]**

138.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

139.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

140.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and the Class in full for some or all of the hours they worked.

141.    Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

142.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011, under NY Wage Theft Prevention Act, and interest.

## COUNT III.

**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf**

**of the Plaintiffs and the FLSA Collective]**

143.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

144.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

145.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

146.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

147.    At all relevant times, Defendants had, and continues to have, a policy of practice of refusing to properly pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

148.    The FLSA and supporting regulations require employers to notify employees of employment law requirements. 29 C.F.R. § 516.4.

149.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate its exploitation of Plaintiffs' and FLSA Collectives' labor.

150.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by its failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when

they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.

### [Violations of New York Labor Law—Failure to Pay Overtime Brought on behalf of Plaintiffs and Rule 23 Class]

151.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

152.    An employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011, and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

153.    At all relevant times, Defendants had a policy and practice of refusing to properly pay overtime compensation to Plaintiffs at one and one-half times the hourly rate Plaintiffs and the class are entitled to.

154.    Defendants' failure to pay Plaintiffs their overtime pay violated the NYLL.

155.    Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.

### [Illegal Tip Retention, NYLL §146-2.18 and NYLL §146-2.20 Brought on behalf of Plaintiffs and the Rule 23 Class]

156.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

157.    Section 196-d of the New York Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

158.    A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

159.    The NYLL prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

160.    Retaining portions of the tips from Plaintiffs to unjustly enrich the Owner/Operator Defendant or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

161.    A charge purported to be a gratuity, including charges advertised to be "delivery fee" to customers, must be distributed in full as gratuities to the service employees or food service workers who provided the service.

162.    §146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

163.    At all relevant times, Defendants had a policy and practice of retaining ten percent (10%) of the gratuities the Plaintiffs and the class were entitled to on any day where Plaintiffs were late, or any time a customer complained.

164.    At all relevant times, Defendants had a policy and practice of retaining part of the gratuities the Plaintiffs and the class were entitled to and use the illegally retained gratuities to

pay the managers and other employees.

165.    Defendants' retention of the gratuities to which Plaintiffs and the class were entitled was not in good faith.

## COUNT VI.

### [Violation of New York Labor Law—Spread of Time Pay Brought on behalf of Plaintiffs and Rule 23 Class]

166.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

167.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

168.    Defendants' failure to pay Plaintiffs' spread-of-hours pay was not in good faith.

## COUNT VII.

### [Violation of New York Labor Law—Failure to Keep Records Brought on behalf of Plaintiffs and Rule 23 Class]

169.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

170.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

171.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated

damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

172.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

173.    In fact, upon information and belief Defendants intentionally and improperly prevented Plaintiffs from accurately clocking in and clocking out , in order to intentionally underreport Plaintiffs' hours worked and underpay Plaintiffs.

174.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

## COUNT VIII.

### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiffs and Rule 23 Class]

175.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

176.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

177.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

178.     Defendants not only did not provide notice to each employee at Time of Hire but failed to provide notice to Plaintiffs even after the fact.

179.     Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).


## COUNT IX.

**[Violations of the Fair Labor Standards Act—Failure to make Prompt Payment on behalf of Plaintiffs and the FLSA Collective]**


180.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

181.     The FLSA provides that "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce... wages at the following rates…" U.S.C. § 206(a).

182.     The FLSA implicitly requires that wages be promptly paid when due.

183.     Defendants' failure to promptly pay Plaintiffs and the FLSA Collective their wages violated the FLSA.

184.    Defendants had, and continues to have, a policy of practice of refusing to promptly pay Plaintiffs and Collective Action Members for all hours worked, often paying Plaintiffs weeks late.

185.    Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover from Defendant liquidated damages equal to 100% of their wages for each pay period in which Defendant failed to promptly pay Plaintiffs their wages pursuant to the FLSA, together with costs and attorneys' fees.

## COUNT X.

### [Violation of New York Labor Law—Failure to Pay Workers in Accordance with the Terms of Employment Brought on behalf of Plaintiffs and Rule 23 Class]

186.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

187.    The NYLL and supporting regulations require that "A clerical and other worker **shall** be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer". NYLL §195-1(d).

188.    Defendants had, and continues to have, a policy of practice of refusing to pay Plaintiffs and Rule 23 Class Members for all hours worked, often paying Plaintiffs weeks late.

189.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendant liquidated damages equal to 100% of their wages for each pay period in which Defendant failed to Plaintiffs their wages pursuant to the terms of their

employment, together with costs and attorneys' fees.

## COUNT XI.

### [Violation of New York Labor Law—Failure to Provide Wage Statements

### Brought on behalf of Plaintiffs and Rule 23 Class]

190.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

191.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

192.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff and did not provide accurate paystubs on or after each Plaintiffs' payday. Defendants intentionally modified paystubs to underreport hours worked by Plaintiffs.

193.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT XII.

**[Violation of New York Labor Law—Illegal Deductions from Wages**

**Brought on behalf of Plaintiffs and Rule 23 Class]**

194.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

195.     The NYLL and supporting prohibit employers from making any deductions in an employee's wage except those expressly permitted by the Labor Law. NYLL § 193.

196.     Defendants have improperly withheld portions of Plaintiffs' wages as a penalty to Plaintiffs for numerous reasons, including but not limited to, Plaintiff arriving late, customers complaining, customers being served the wrong order, and accidentally causing property damage.

197.     Further Defendants improperly required all employees to contribute to a monthly fund to deep clean the Restaurant.

198.     Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, liquidated damages together with costs and attorneys' fees.

## COUNT XIII.

**[Violations of New York Labor Law – Failure to Provide Safe and Sick Leave**

**Brought on Behalf of Plaintiffs and Rule 23 Class]**

199.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

200.    The NYLL and supporting regulations require employers that employ between 5 and 100 employees to provide employees with 1 hour of paid safe and sick leave each calendar year for every 30 hours worked, up to 40 hours.

201.    Defendants are employers within the meaning of the NYLL.

202.    Plaintiffs are "employees" as defined in the NYLL.

203.    Defendants had a practice of failing to provide any employees, including but not limited to Plaintiffs, with paid safe and sick leave as provided by the NYLL.

204.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, liquidated damages together with costs and attorneys' fees.


## COUNT XIV.

### [Breach of Employment Agreement

### Brought on behalf of Plaintiff Wu]

205.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

206.    As per the terms of his employment with Defendants, Defendants agreed to provide Plaintiff Wu with one week of paid vacation per year.

207.    Plaintiff Wu fully performed all the terms of his employment with Defendants. Defendants breached their agreement with Plaintiff Wu by refusing to provide him with any of the paid vacation promised to him.

## COUNT XIV.

### [Violation of New York Labor Law— Retaliation Prohibition

### Brought on behalf of Plaintiff Wu]

208.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein

209.    The NYLL and supporting regulations require prohibit employers from discharging, threatening, penalizing, or in any other manner discriminating against any employee for making a complaint that the employer has engaged in conduct that violates any provision of the NYLL.

210.    Defendants are employers within the meaning of the NYLL.

211.    Plaintiff Wu is an "employee" as defined in the NYLL.

212.    In or around June 2020, Plaintiff Wu complained to Defendants that they were not properly providing him with any paid sick leave or vacation time, as he had been promised.

213.    Upon receipt of this complaint, Defendants continued to refuse to provide Plaintiff Wu with any sick leave or vacation, and shortly thereafter terminated him as a result of raising such complaint.

214.    Defendants have unlawfully retaliated against Plaintiff Wu, in violation of the NYLL.

215.    Due to Defendants' violations of New York Labor Law, Plaintiff Wu is entitled to recover from Defendants, jointly and severally, liquidated damages, costs and reasonable attorneys' fees, and an award of lost compensation and damages pursuant to the NYLL"

## **TOLLING OF THE STATUTE OF LIMITATIONS**

216.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

217.    Upon information and belief, Defendants knew that Plaintiffs and members of the FLSA Class/Collective were entitled to proper minimum wages and overtime compensation, and knowingly and maliciously violated the FLSA and NYLL.

218.    Upon information and belief, Defendants concealed from Plaintiffs and members of the FLSA Class/Collective their rights to receive minimum wages and overtime compensation.

219.    Upon information and belief, Defendants failed to provide Plaintiffs and members of the FLSA Class/Collective with notice of their rights to receive minimum wages and overtime compensation.

220.    Because Defendants, upon information and belief, have concealed from Plaintiffs and members of the FLSA Class/Collective notice of their rights to receive minimum wages and overtime compensation as required by FLSA, discussed supra, the claims of Plaintiffs and the FLSA Collective for unpaid overtime compensation, statutory damages, and other relief, may extend beyond the statute of limitations for violations of the FLSA and NYLL on the grounds of equitable tolling.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)      An Order tolling the statute of limitations;

b)      An Order certifying a Rule 23 Class;

c)      Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

d)      Certification of this case as a collective action pursuant to FLSA;

e)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

f)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)      An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with it as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

i)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

k)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

l)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

m)      An award of liquidated damages as a result of Defendants' failure to promptly pay Plaintiffs' wages pursuant to the FLSA;

n)      An award of liquidated damages as a result of Defendants' failure to pay Plaintiffs' wages in accordance with the agreed terms of employment pursuant to New York Labor Law;

o)      An award of liquidated damages as a result of Defendants' failure to provide Plaintiffs paid safe and sick leave pursuant to the New York Labor Law.

p)  An award of liquidated and/or punitive damages, and compensatory damages for lost wages as a result of Defendants' knowing and willful failure to comply with the anti-retaliation provisions of the New York Labor Law .

q)  An award of liquidated damages to Plaintiff Wu as a result of Defendants' failure to pay him the agreed-upon paid vacation.

r)  An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

s)  The cost and disbursements of this action;

t)  An award of prejudgment and post-judgment fees;

u)  Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

v)  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: October 25, 2024                **Xue & Associates, P.C.**
      Glen Cove, New York          *Attorneys for the Plaintiffs, proposed FLSA*
                                    *Collective and potential Rule 23 Class*

                     By:   /s/ BENJAMIN B. XUE
                              Benjamin B. Xue, Esq.
                              Michael S. Romero, Esq.
                              1 School Street, Suite 303A
                              Glen Cove, NY 11542
                              Tel.: (516) 595-8887
                              benjaminxue@xuelaw.com
                              mromero@xuelaw.com