UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
IRENE CHOR LING MA *et al.*, on behalf
of themselves and others similarly situated,

                  Plaintiffs,

        -against-

MAXIM INTERNATIONAL GROUP INC. *et al.*,

                  Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-7457 (OEM) (VMS)

ORELIA E. MERCHANT, United States District Judge:

Irene Chor Ling Ma ("Ma"), Bernard Lap Shun Leung ("Leung"), Tak Y. Chan ("Chan"), Zhuo Zhou Wu ("Wu"), and Liu Ping Tan ("Tan") (collectively, "Plaintiffs") bring this wage-and-hour action against Maxim International Group Inc., which does business as Zen Ramen & Sushi ("Maxim"), Celina Lin ("Lin"), Cindy Jin ("Jin"), Zen Ramen & Sushi Inc. ("Zen Ramen Inc."), Phoenix Trading ("Phoenix"), Tao Feng ("Feng"), Jia Lin Pan ("Pan"), and KGL Real Estate LLC ("KGL"). *See generally* First Amended Complaint, Dkt. 35 ("Amended Complaint" or "Am. Compl."). Plaintiffs sue Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and New York law. Before the Court is Pan and KGL's joint motion to dismiss Plaintiffs' claims against them.[1] For the following reasons, their Motion is granted in part and denied in part.

---

[1] *See* Notice of Motion, Dkt. 55 ("Motion" or "Mot."); Memorandum of Law in Support of Defendants Jia Lin Pan and KGL Real Estate LLC's Motion to Dismiss the First Amended Complaint, Dkt. 56 ("Mem."); Declaration of Benjamin B. Xue in Opposition to Defendants' Jia Lin Pan and KGL Real Estate LLC's Motion to Dismiss, Dkt. 57 ("Xue Declaration" or "Xue Decl."); Plaintiffs' Memorandum of Law in Opposition to Defendants Jia Lin Pan and KGL Real Estate LLC's Motion to Dismiss, Dkt. 58 ("Opposition" or "Opp'n"); and Memorandum of Law in Reply to Plaintiff's Opposition to Motion to Dismiss, Dkt. 59 ("Reply").

**BACKGROUND**

## A.  Factual Background[2]

This dispute arises out of work Plaintiffs performed at a restaurant located at 150 West 36th Street, New York, New York, 10018 (the "Restaurant"), over the time period spanning approximately January 2017 to August 2024.  Am. Compl. ¶¶ 9-19, 57-150.

### 1.  Plaintiffs

At the Restaurant, Ma, Leung, and Chan were all ostensibly hired as waitstaff, while Wu worked as a sushi chef and Tan worked as "a kitchen helper and dishwasher." *Id.* ¶¶ 9-19.  While employed there, Plaintiffs allege that Defendants failed to compensate them sufficiently in a variety of ways: by failing to pay them the minimum wage, failing to pay them overtime, illegally retaining their tips, illegally making deductions in their pay, failing to pay spread-of-hours pay, failing to provide safe-and-sick leave, failing to pay them promptly, failing to keep accurate time records, failing to provide a wage notice, failing to provide wage statements, and failing to compensate them in accordance with the terms of their employment. *Id.* ¶¶ 57-150, 178-249.  With regards to Wu and Tan, in particular, Plaintiffs additionally allege that Defendants breached their employment agreements by failing to provide them each with one week of paid vacation per year. *Id.* ¶¶ 134, 149, 250-52.  Plaintiffs also contend that Defendants retaliated against Wu by firing him shortly after he complained that Defendants were not providing him with any paid sick leave or vacation time, as he had been promised.  *Id.* ¶¶ 120, 253-60.

### 2.  Defendants

As alleged in the Amended Complaint, the Restaurant was owned and operated, at least in part, by Lin and Jin via Maxim.  *Id.* ¶¶ 20-33.  Maxim "is a domestic business corporation

---

[2] The following facts are taken from the Complaint and assumed to be true for the purposes of Defendant's Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

organized under the laws of the State of New York with a principal address" identical to the Restaurant, at 150 West 36th Street, New York, New York 10018. *Id.* ¶ 20. Maxim does business as "Zen Ramen & Sushi," which Plaintiffs assert is the Restaurant's "trade name." *Id.* ¶ 176. "Upon information and belief," Plaintiffs assert that Lin is the "officer, director, manager and/or majority shareholder, owner[,] or de facto owner of Maxim," *id.* ¶ 26, and that Jin is another "officer, director, manager and/or shareholder or owner of Maxim," *id.* ¶ 31.[3]  Plaintiffs add that as a "part-owner of, liquor license principal for, and an active, day-to-day manager of Maxim," Lin "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Restaurant." *Id.* ¶ 27. As another "part-owner" and "an active, day-to-day manager at the Restaurant," Jin allegedly held the same responsibilities and powers. *Id.* ¶ 31.

After two lawsuits were brought against Defendants in the U.S. District Courts for the Southern and Eastern Districts of New York, one of which was commenced "on or around June 2, 2019," and resulted in a judgment in the amount of $261,090.57 entered against Defendants "[o]n or around January 2023," *id.* ¶¶ 161, 167, and the other of which was commenced "on or around February 13, 2024," Plaintiffs contend that Maxim, Phoenix, Lin, and Jin "transferred substantially all of their assets to" Zen Ramen Inc., Feng, Pan, and KGL, *id.* ¶ 170. Plaintiffs claim that Zen Ramen Inc., Feng, Pan, and KGL then purchased the property where the Restaurant operated for $6.5 million—money, which Plaintiffs argue "at least partially" comprised fraudulently transferred

---

[3] Plaintiffs additionally identify Phoenix as a "Corporate Restaurant Defendant[]" involved in the running of the Restaurant. Am. Compl. ¶¶ 23-25, 38. However, Plaintiffs do not provide any additional information about Phoenix and its purported role with respect to the Restaurant beyond that it is "a domestic business entity organized under the laws of the State of New York with a principal address" also at 150 West 36th Street, New York, New York, 10018. *Id.* ¶ 23. Plaintiffs indicate that, at the time of the filing of the Amended Complaint on June 5, 2025, the "true form of the entity is unknown," *id.*, and, to date, Phoenix has not appeared in this action.

funds from Maxim, Phoenix, Lin, and Jin.  *Id.* ¶ 172.  Plaintiffs further contend that while the instant action was pending Maxim and Lin "transferred all the assets of the Restaurant to Zen Ramen [Inc.] . . . and . . . Feng [o]n or about February 2025 for no consideration" and with no notice.  *Id.* ¶ 173.  In addition to being an "officer, director, manager and/or majority shareholder, owner or de facto owner of Maxim," Lin is ostensibly the same with respect to Zen Ramen Inc.  *Id.* ¶ 26.  Lin and Pan are allegedly married, and Pan "is the owner" of KGL.  *Id.* ¶ 36.

Plaintiffs contend that Maxim, Phoenix Trading, Zen Ramen Inc., and KGL were either joint employers of or operated as a single-integrated enterprise that employed Plaintiffs.  *Id.* ¶ 38; *see id.* ¶¶ 38-42.  After the transfer, the Restaurant ostensibly "still operate[d] under the same trade name, Zen Ramen & Sushi, use[d] the same employees, kept the same phone numbers, operated out of the same location, r[a]n the same business[,] and continued the same employment policies and practices."  *Id.* ¶ 176.  Plaintiffs allege that Lin "would often handle affairs concerning the [real property where the Restaurant is located]" and that Pan "would also handle affairs concerning the Restaurant from time to time."  *Id.* ¶ 39.  By way of an example, Plaintiffs assert that they were "required to clean the entirety of the [real property] – not just the Restaurant, and further, were required to perform repairs to the [real property], including but not limited to changing locks, . . . light fixtures, and performing renovation."  *Id.* ¶ 40.  Plaintiffs also ostensibly "worked as doorpeople" for the real property.  *Id.*  "Pan would come to the Restaurant and consume[] meals without paying and would direct [e]mployees to perform various tasks."  *Id*.

### B.  Procedural Background

On October 25, 2024, Ma, Leung, Chan, and Wu commenced this action on behalf of themselves and others similarly situated by filing a wage-and-hour complaint against Maxim, Lin,

Jin, and Jessica Chen (also known as Jessica Chan) ("Chen"). *See generally* 29 U.S.C. § 216(b) Collective Action & Fed. R. Civ. P. 23 Class Action Complaint, Dkt. 1 ("Complaint" or "Compl.").

On December 12, 2024, Maxim, Lin, and Jin filed a pre-motion conference request on an anticipated motion to dismiss, *see* Letter from Maxim, Lin, and Jin to the Court (Dec. 12, 2024), Dkt. 16, and that letter was subsequently removed due to personally identifying information, *see* Order, dated Dec. 18, 2024, and refiled on December 19, 2024, with redactions, *see* Letter from Maxim, Lin, and Jin to the Court (Dec. 19, 2024), Dkt. 18. On December 24, 2024, Ma, Leung, Chan, and Wu filed a response letter. *See* Letter from Ma, Leung, Chan, and Wu to the Court (Dec. 24, 2024), Dkt. 19. The Court granted Maxim, Lin, and Jin's pre-motion conference request and held a pre-motion conference on January 8, 2025, at 10:00 a.m. *See* Order, dated Dec. 28, 2024.

After hearing the parties' respective arguments at the pre-motion conference and, for reasons stated on the record, the Court ordered Maxim, Lin, and Jin to file a status report by January 15, 2025, indicating whether they intended to respond to the Complaint by answer or motion to dismiss. *See* Minute Entry, dated Jan. 8, 2025. On January 15, 2025, Maxim, Lin, and Jin indicated that they planned to proceed by motion to dismiss, *see* Letter from Maxim, Lin, and Jin to the Court (Jan. 15, 2025), Dkt. 24, and on January 16, 2025, the Court set a briefing schedule with oral argument, *see* Scheduling Order, dated Jan. 16, 2025.

On March 12, 2025, the Court held oral argument on Maxim, Lin, and Jin's fully briefed motion to dismiss, *see generally* Notice of Motion to Dismiss, Dkt. 25; Memorandum of Law in Support of Motion to Dismiss, Dkt. 26; Memorandum of Law in Support of Motion to Dismiss, Dkt. 27; Plaintiffs' Memorandum of Law in Opposition to Defendants Maxim International Group Inc., Celina Lin, and Cindy Jin's Motion to Dismiss, Dkt. 29, and for the reasons stated on the

5

record, the Court denied the motion to dismiss from the bench, *see* Minute Entry, dated Mar. 12, 2025. Maxim, Jin, and Lin then filed an answer with affirmative defenses on March 25, 2025. *See generally* Answer to Complaint with Affirmative Defenses, Dkt. 33.

On June 5, 2025, Ma, Leung, Chan, and Wu filed an amended complaint with the consent of Maxim, Lin, and Jin. *See* Order, dated May 30, 2025. *See generally* Am. Compl. Among other things, Tan joined as a plaintiff, and Zen Ramen Inc., Phoenix, Feng, Pan, and KGL were added as defendants. *Id.* at 1. Chen, whom Plaintiffs confirmed was the same person as Lin, was removed as a defendant. *Compare* Compl. at 1, *with* Am. Compl. at 1; *see also* Order, dated May 7, 2026 (terminating Chen as a defendant). The Amended Complaint asserts eighteen claims against Defendants:

- Count 1: FLSA violation for failing to pay the minimum wage and for unpaid wages brought "on behalf of the Plaintiffs and the FLSA Collective," Am. Compl. ¶¶ 178-82;

- Count 2: New York Labor Law ("NYLL") violation for failing to pay the minimum wage and for unpaid wages brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 183-87;

- Count 3: FLSA violation for failing to pay overtime brought "on behalf of the Plaintiffs and the FLSA Collective," *id.* ¶¶ 188-95;

- Count 4: NYLL violation for failing to pay overtime brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 196-99;

- Count 5: NYLL violation for illegal tip retention brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 201-10;

- Count 6: NYLL violation for spread-of-time pay brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 211-13;

- Count 7: NYLL violation for failing to keep records brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 214-19;

- Count 8: NYLL violation for failing to provide time-of-hire wage notices brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 220-24;

- Count 9: FLSA violation for failing to make prompt payment "on behalf of the Plaintiffs and the FLSA Collective," *id.* ¶¶ 225-30;

6

- Count 10: NYLL violation for failing to pay workers in accordance with their terms of employment brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 231-34;

- Count 11: NYLL violation for failing to provide wage statements brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 235-38;

- Count 12: NYLL violation for illegal deductions of wages brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 239-43;

- Count 13: NYLL violation for failing to provide safe-and-sick leave brought "on behalf of the Plaintiffs and the Rule 23 Class," *id.* ¶¶ 244-49;

- Count 14: Breach of employment agreement brought "on behalf of Plaintiffs Wu and Tan," *id.* ¶¶ 250-52;

- Count 15: NYLL violation for retaliation brought "on behalf of Plaintiff Wu," *id.* ¶¶ 253-60;[4]

- Count 16: Fraudulent transfer in violation of New York's Uniform Voidable Transactions Act ("UVTA") and Debtor and Creditor Law ("DCL") brought "on behalf of Plaintiffs against All Defendants," *id.* ¶¶ 261-74;

- Count 17: Piercing the corporate veil brought "on behalf of Plaintiffs against Defendants," *id.* ¶¶ 275-84;

- Count 18: Piercing the corporate veil brought "on behalf of Plaintiffs against Zen Ramen Inc., Feng, Pan, and KGL," *id.* ¶¶ 285-93.

Plaintiffs additionally assert that the FLSA and NYLL claims' statutes of limitation may be tolled on the grounds of equitable tolling "[b]ecause Defendants, upon information and belief, have concealed" from Plaintiffs and members of the class their rights under those laws. *Id.* ¶ 298. Plaintiffs demand a jury trial and seek, among other things, declaratory, injunctive, and monetary relief. *Id.* at 47-50.

Defendants subsequently responded to the Amended Complaint. On July 21, 2025, Maxim, Lin, and Jin filed an answer with affirmative defenses and counterclaims. *See generally* Answer to First Amended Complaint with Affirmative Defenses and Counterclaims, Dkt. 39. On

---

[4] The Amended Complaint lists two "Count XIV[s]," *see* Am. Compl. at 41, which this Court construes as a typographical error.

August 29, 2025, Plaintiffs, in turn, filed their answer to Maxim, Lin, and Jin's counterclaims. *See generally* Answer to Defendants Maxim International Group Inc., Celina Lin, and Cindy Jin's Counterclaims, Dkt. 40. In lieu of filing a responsive pleading, Pan and KGL requested a pre-motion conference on an anticipated motion to dismiss, *see* Letter from Pan and KGL to the Court (Nov. 3, 2025), Dkt. 48; Plaintiffs filed a response to the request, *see* Letter from Plaintiffs to the Court (Nov. 10, 2025), Dkt. 49; and the Court denied Pan and KGL's request for a pre-motion conference and set a briefing schedule instead, *see* Order, dated Nov. 12, 2025. Pan and KGL's fully briefed motion was filed on the docket on January 26, 2025. *See generally* Mot.; Mem.; Xue Decl.; Opp'n; Reply.

## LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a complaint need not contain "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557). When reviewing a complaint under Rule 12(b)(6), the Court is generally limited to the allegations contained within the complaint's four corners. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("For purposes of this rule, 'the complaint is deemed to

8

include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect," which renders the document 'integral' to the complaint." (citations omitted) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam))).[5]

## DISCUSSION

Pan and KGL present three main arguments for dismissal of this action: (1) that Plaintiffs' FLSA claims (Counts 1, 3, and 9) must be dismissed against them because Plaintiffs have not plausibly stated claims under that statute; (2) that, because Plaintiffs have failed to state claims under the FLSA, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims (Counts 2, 4-8, 10-18); (3) that, even if the Court were to exercise supplemental jurisdiction over those remaining state-law claims, Plaintiffs have failed to state claims under the NYLL (Counts 2, 4-8, 10-13, 15) for the same reasons that they have failed to state a claim under the FLSA and have otherwise failed to state a claim on their remaining state-law claims (Counts 14, 16-18) as well. *See* Mem. at 8-39. Plaintiffs respond that they have properly stated claims and that this Court may properly exercise supplemental jurisdiction. *See* Opp'n at 5-29. The Court addresses each argument in turn.

---

[5] Pan and KGL frame their Motion as one made under both Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. However, the essence of their argument is that because Plaintiffs fail to state an FLSA claim against them under Rule 12(b)(6) and because the FLSA is the only basis for original federal jurisdiction, the Court should, in its discretion, decline to exercise supplemental jurisdiction over the remaining state-law claims against them under 28 U.S.C. § 1367. *See* Mem. at 8-25, 36-37.

Pan and KGL's Motion is thus more aptly framed as a Rule 12(b)(6) motion. "While the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, see 28 U.S.C. § 1367(c)(3), it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). As Pan and KGL assert, *see* Mem. at 36-37, Plaintiffs invoke the Court's federal question jurisdiction by asserting claims under the FLSA. *See* Am. Compl. ¶ 7. Thus, the Court must first assess whether Plaintiffs have plausibly stated a claim against Pan and KGL under the FLSA before turning to the discretionary issue of supplemental jurisdiction.

**A. Plaintiffs Have Failed to State a Claim Against Pan and KGL Under the FLSA.**

First, Pan and KGL argue that Plaintiffs have not stated claims under the FLSA (Counts 1, 3, and 9) because they have failed to plausibly allege that Pan and KGL were their employers. Mem. at 8-25.  Specifically, Pan and KGL contend that Plaintiffs have not alleged that Pan and KGL exercised formal or functional control over Plaintiffs and that Plaintiffs' single integrated enterprise theory does not apply in the FLSA context; but even if it were to apply, Pan and KGL assert that Plaintiffs have not adequately alleged a single integrated enterprise and that their allegations of such are conclusory.  *Id.*  Plaintiffs respond that they have sufficiently stated that Pan and KGL exercised functional control over them and that Pan and KGL operated within a single integrated enterprise.  Opp'n at 5-11.  Plaintiffs add that the Amended Complaint's allegations are not conclusory.  *Id.* at 11-14.

Plaintiffs have failed to state a claim against Pan and KGL under the FLSA.  "To be held liable under the FLSA, a person must be an 'employer,'" within the meaning of the statute. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  As the Supreme Court has long observed, the FLSA's language is "exceedingly broad."  *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295-96 (1985).  An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and "'employ' includes to suffer or permit to work," *id.* § 203(g).  Interpreting this expansive language, the Supreme Court has stated that courts should assess whether a person qualifies as an "employer" under the FLSA by looking to "'the circumstances of the whole activity' . . . in light of [the] 'economic reality.'"  *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (citations omitted) (first quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); and then quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)); *see also Barfield v.*

10

*N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) ("[T]his court has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.").

Interpreting this directive in the context of joint employment, the Second Circuit has developed two main sets of factors. The first, often referred to as "formal control," *Barfield*, 537 F.3d at 143, considers whether an employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records," *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). The second, often referred to as "functional control," *Barfield*, 537 F.3d at 143, assesses:

> (1) whether [the secondary joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether [the primary joint employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the secondary joint employer's] process of production; (4) whether responsibility under the contracts could pass from one [employee] to another without material changes; (5) the degree to which the [secondary joint employer] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [secondary joint employer],

*Zheng*, 355 F.3d at 72.

Importantly, the Second Circuit has cautioned that none of these factors is dispositive and that they "state no rigid rule for the identification of an FLSA employer." *Barfield*, 537 F.3d at 143. Instead, they "provide 'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143 (quoting *Zheng*, 355 F.3d at 75). "'[M]echanical application' of any set of factors 'is to be avoided.'" *Barfield*, 537 F.3d at 143 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.

11

1988)).  A court is "free to consider any other factors it deems relevant to its assessment of the economic realities."  *Zheng*, 355 F.3d at 71-72.

### 1.  Plaintiffs' Claims Against Pan

Plaintiffs have not plausibly alleged the control required to state an FLSA claim against Pan.  In the context of individual liability, the Second Circuit has focused on the *Carter* "formal control" factors.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 105 n.4, 111 (2d Cir. 2013); (noting how the *Zheng* factors were "not directly implicated"); *Herman*, 172 F.3d at 139-41.  In addition, the Second Circuit has considered whether an individual exercised "operational control"; in other words, whether the individual "possess[es] control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."  *Irizarry*, 722 F.3d at 109; *see Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018).  Mere "[o]wnership, or a stake in a company," alone "is insufficient to establish that an individual is an 'employer.'"  *Irizarry*, 722 F.3d at 111.

Plaintiffs' allegations against Pan are insufficient.  As detailed above, Plaintiffs assert that Maxim, Phoenix, Zen Ramen Inc., and KGL were joint employers.  Am. Compl. ¶ 38.  Regarding Pan, in particular, Plaintiffs assert that he is "the owner" of KGL, which, in turn, at least partially owns the real property that the Restaurant operated out of.  *Id.* ¶¶ 37, 172.  Plaintiffs assert that Pan is married to Lin, who, herself allegedly owns Maxim and Zen Ramen Inc.  *Id.* ¶¶ 26-27, 36.  Plaintiffs state that Lin "would often handle affairs concerning the [real property]," while Pan would "handle affairs concerning the Restaurant from time to time," *id.* ¶ 39, and that he "would come to the Restaurant[,] . . . consume[] meals without paying[,] and . . . direct Employees to perform various tasks," *id.* ¶ 40.

Put simply, Plaintiffs' allegations against Pan are too vague.  They do not plausibly allege that Pan "(1) had the power to hire and fire the employees, (2) supervised and controlled employee

12

work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12.  Nor is there any plausible allegation that he had operational control of KGL linked to Plaintiffs' employment beyond the mere fact of his ownership of KGL.  *See Irizarry*, 722 F.3d at 109.  Even assuming that Pan would "handle affairs concerning the Restaurant from time to time" due to his alleged marital relationship with Lin, Am. Comp ¶ 39,[6] that allegation is too attenuated to plausibly assert control in and of itself, nor do Plaintiffs cite any authority to support that inferential leap, *see* Opp'n at 5-9.  Such allegations are insufficient.  *Compare Cui v. E. Palace One, Inc.*, 17 Civ. 6713 (PGG), 2019 WL 4573226, at *6-8 (S.D.N.Y. Sep. 20, 2019) (concluding that the plaintiffs had not plausibly asserted that individual defendants were their employers where they had merely put forth "conclusory assertions" as to their involvement in the operation of the restaurants at issue), *and Yeh v. Han Dynasty, Inc.*, 18 Civ. 6018 (PAE), 2019 WL 633355, at *7-8 (S.D.N.Y. Feb. 14, 2019) (same)*, with Cano v. Sushi Chain, Inc.*, 19-CV-3509 (RRM) (LB), 2021 WL 84276, at *4 (E.D.N.Y. Jan. 11, 2021) (holding that the plaintiff stated a claim against an individual defendant where the plaintiff asserted, among other things, that the individual defendant "told him and other workers to perform tasks at the restaurant, including preparing food, organizing supplies, and cleaning in or around the restaurant; . . . hired, fired, disciplined, and 'castigated' employees; . . . authorized purchases of supplies and kitchen equipment; and . . . told [the plaintiff that] she would intervene to improve his working conditions when he expressed dissatisfaction at work").

---

[6] Pan and KGL assert that Pan is not, in fact, married to Lin.  Mem. at 24.  However, as stated above, the Court assumes the truth of the Plaintiffs' allegations for the purposes of resolving Pan and KGL's motion to dismiss. *See Iqbal*, 556 U.S. at 678.

13

Moreover, Plaintiffs put forward no argument on the topic of formal control. *See* Opp'n at 5-14. Instead, Plaintiffs lump Pan and KGL into one group—the "KGL Defendants"—and focus on functional control under *Zheng* and a single integrated enterprise theory. *Id.*[7]   The Court construes this silence as a concession. *See, e.g.*, *Yeh*, 2019 WL 633355, at *7 (noting that the plaintiff "effectively concede[d]" arguments that he failed to put forth in his amended complaint and in opposition to the moving defendants' motion to dismiss); *cf. Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("'[W]hen a party fails adequately to present arguments' in a brief, a court may properly 'consider those arguments abandoned,' especially 'in the case of a counseled party' where 'a court may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." (citations omitted) (first quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004); and then quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014))).

### 2. Plaintiffs' Claims Against KGL

Plaintiffs' allegations against KGL fare no better.  Plaintiffs assert that KGL was a joint employer, alongside Maxim, Phoenix, and Zen Ramen, who together "[paid] Plaintiffs as the shareholders/members/owners of the enterprise, advertise[d] . . . as an enterprise, and . . . otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and [were] co-owned by the same people." Am. Compl. ¶ 38.  Plaintiffs add that KGL at least partially owned the real property that the Restaurant operated out of, *id.* ¶¶ 37, 172, and that Plaintiffs did some tasks relating to that real property,

---

[7] "For the purposes of [their] opposition," Plaintiffs state that they "do not argue that [Pan and KGL] exercised formal control over Plaintiffs, as [Pan and KGL] can be found to be Plaintiffs' employers on other grounds"; however, they attempt to preserve this argument by stating that "discovery, which has not yet been concluded, may reveal that several of the *Carter* factors may be present."  Opp'n at 6 n.1.  This assertion, however, misconstrues the applicable Rule 12(b)(6) pleading standard.  Discovery is not a substitute for plausibility in federal court. *Cf. Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (declining to permit a complaint to "proceed through discovery upon the insertion of a single legal conclusion").

including, but not limited to, working as "doorpeople," "changing locks, changing lighting fixtures, and performing renovation[s]," *id.* ¶ 40.

### a.  Formal Control

As with Pan above, Plaintiffs do not argue that KGL had formal control, *see* Opp'n at 6 n.1, which the Court views as a concession. *See, e.g.*, *Yeh*, 2019 WL 633355, at *7; *cf. Malik*, 841 F. App'x at 284.  Plaintiffs either simply recite certain elements of formal control, Am. Compl. ¶ 38, which is insufficient, *see Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 588 (S.D.N.Y. 2020) (It is "paradigmatic" that the "formulaic recitation of the elements of a cause of action' is insufficient to establish a claim for relief under *Twombly* and *Iqbal*." (quoting *Iqbal*, 556 U.S. at 678)), or, as Pan and KGL observe, "omit essential details, such as how often these tasks occurred, whether they were part of Plaintiffs' job responsibilities," or "who, if anyone, actually instructed Plaintiffs to perform such work," Mem. at 11; *see also* Mem. at 11-12.  Plaintiffs' allegations are conclusory and vague.  They do not assert that KGL "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12,

*Nieto v. Village Red Restaurant Corp.*, 17 Civ. 2037 (JCF), 2017 WL 4539327, (S.D.N.Y. Oct. 10, 2017), is instructive.  There, a former restaurant worker sued the realty company that owned the building in which the restaurant operated, among other defendants, under the FLSA and NYLL.  Similar to Plaintiffs here, the plaintiff in *Nieto* asserted that the restaurant and the realty company "were a single and joint employer of Plaintiff with a high degree of interrelated and unified operations, common control, common business purpose, interrelated business goals, and common ownership and management" and that he had been "required to perform services for [the

15

realty company], including sweeping and cleaning the building's hallways and cleaning trash receptacles." *Id.* at \*3.  Ultimately, the court held that the plaintiff's allegations against the realty company were "conclusory" and "nonspecific" because the plaintiff merely asserted elements of the control and because the plaintiff did not "indicate who 'required' him to clean the building" or "whether he was cleaning an area rented and controlled by [the restaurant] or controlled only by [the realty company].  There [additionally were] no allegations that [the realty company] had the power to hire or fire, set wages, maintain employment records, control his schedule, or set his conditions of employment." *Id.*  Such is the case here.

### b.  Functional Control

Plaintiffs have also not plausibly alleged that KGL exercised functional control.[8] Beginning with the first *Zheng* factor ("whether [the secondary joint employer's] premises and equipment were used for the plaintiffs' work," 355 F.3d at 72), Plaintiffs assert that KGL "is a company that owns the piece of real property . . . where the Restaurant is located" and where Plaintiffs worked.  Am. Compl. ¶ 37.  "By its very nature," Plaintiffs contend, "the [real property] was used for Plaintiffs' work." *See* Opp'n at 6.  Although these allegations fail to provide insight into the nature of the real property and ownership of the equipment therein, assuming their truth, the Court agrees that this factor has been adequately alleged. *See, e.g., Cucul*, 2024 WL 2783505,

---

[8] Because the Second Circuit has explicitly emphasized flexibility and nonexclusivity in the FLSA employer analysis, the Court assesses functional, as well as formal, control. *See Barfield*, 537 F.3d at 143.  However, the *Zheng* factors were developed in the context of production manufacturing and dealt with the relationship between a garment manufacturer and a contractor hired to finish clothing. *See Zheng*, 355 F.3d at 64.  This case, by contrast, involves the service industry and ostensibly no contractor; the relevance of these factors is thus limited. *See Yeh*, 2019 WL 633355, at \*6 (noting that the "the *Zheng* factors are most relevant in the context of subcontractor relationships, to determine whether a general contractor exerts sufficient control over the subcontractor's workers to support a finding of employer status" (citing *Greenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016))); *cf. In re Domino's Pizza Inc.*, 16-CV-2492 (AJN)(KNF), 2018 WL 4757944, at \*8-9 (S.D.N.Y. Sep. 30, 2018) (noting, at the summary-judgment stage, that certain functional control factors were "difficult to translate" in a case involving a restaurant franchisor and franchisee).

at *11 (finding it "clear" from the second amended complaint that plaintiffs, who were hired to clean restaurants, used the restaurants' premises and cleaning equipment).

As to the second *Zheng* factor ("whether [the primary joint employer] had a business that could or did shift as a unit from one putative joint employer to another," *Zheng*, 355 F.3d at 72), the Amended Complaint contains no allegation that the business could or did shift as a unit among the alleged joint employers.  Rather, Plaintiffs allege only that they did real property–related tasks for KGL, such as repairs and cleaning.  Am. Compl. ¶ 40.  These allegations contain so little detail as to effectively disable the Court from applying the second *Zheng* factor.  *Compare, e.g.*, *Yeh*, 2019 WL 633355, at *8 (noting that the amended complaint "contain[ed] so little detail as to effectively disable the Court from applying the *Zheng* or other functional factors to [certain] persons")*, with Cucul v. Major Cleaning, Inc.*, 22-CV-601(KAM)(CLP), 2024 WL 2783505, at *11 (E.D.N.Y. May 30, 2024) (finding that the plaintiffs, who were cleaners primarily employed by a cleaning company who was hired to clean several restaurants, did meet this factor because they were "staffed at five separate restaurants" and purported to be a "full-service janitorial and building services firm" that worked for a variety of clients, thereby making it less likely that they were involved in joint employment (citation omitted)).  Plaintiffs are silent on this issue in their Opposition, *see* Opp'n at 6-7, which the Court construes as a concession.  *See, e.g.*, *Yeh*, 2019 WL 633355, at *7; *cf. Malik*, 841 F. App'x at 284.

Plaintiffs' allegations relating to the third *Zheng* factor ("the extent to which plaintiffs performed a discrete line-job that was integral to [the secondary joint employer's] process of production," *Zheng*, 355 F.3d at 72) are similarly sparse.  In their Opposition, Plaintiffs assert that they were "directed to do" tasks for the real property that were "integral" to the real property's maintenance.  Opp'n at 6-7.  However, the Amended Complaint's only allegations on this point

17

are the threadbare assertions that KGL is "a company that owns the piece of real property . . . where the Restaurant is located," Am. Compl. ¶ 37, and that Plaintiffs were "required" to do different tasks on the property, including cleaning and repairs, *id.* ¶ 40. Even resolving ambiguities in Plaintiffs' favor, the Court cannot discern, without more detail, whether such tasks were done within the Restaurant itself or elsewhere on the real property, what the precise nature of KGL's business was, and whether such tasks were integral to KGL's functioning. *Compare, e.g.*, *Yeh*, 2019 WL 633355, at *8 (concluding that it was unable to apply *Zheng* due to a lack of detail in the amended complaint)*, with Cucul*, 2024 WL 2783505, at *11 (concluding that "it was a matter of common sense that janitorial workers are important to the continued operation of a restaurant" where plaintiffs were a janitorial company hired by a restaurant). Moreover, the *Zheng* Court has cautioned against interpreting this factor too broadly "because all subcontractors perform a function that a general contractor deems 'integral' to a product or service," 355 F.3d at 73, and developed this factor in the context of product manufacturing; since then, courts have questioned its applicability in the service industry. *See Cucul*, 2024 WL 2783505, at *11 (first citing *Godlewska v. HDA*, 916 F. Supp. 2d 246, 263 (E.D.N.Y. 2013), *aff'd*, 561 F. App'x 108 (2d Cir. 2014); and then citing *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 134 (S.D.N.Y. 2011)).

Plaintiffs' allegations relating to the fourth *Zheng* factor ("whether responsibility under the contracts could pass from one [employee] to another without material changes," *Zheng*, 355 F.3d at 72) are also thin. Here, too, the Amended Complaint asserts only that KGL is "a company that owns the piece of real property . . . where the Restaurant is located," Am. Compl. ¶ 37, and that Plaintiffs were "required" to do different tasks on the property, including cleaning and repairs, *id.* ¶ 40. From these limited allegations, the Court cannot conclude that Plaintiffs have plausibly

18

alleged this factor.  Here, too, Plaintiffs do not advance any argument relating to this factor in their Opposition, *see* Opp'n at 6-7, which the Court views as a concession.  *See, e.g.*, *Yeh*, 2019 WL 633355, at \*7; *cf. Malik*, 841 F. App'x at 284.

Plaintiffs' allegations relating to the fifth *Zheng* factor ("the degree to which the [secondary joint employer] or their agents supervised plaintiffs' work") are similarly skeletal.  *Zheng*, 355 F.3d at 72.  This factor is "largely the same" as the second *Carter* factor.  *Godlewska*, 916 F. Supp. 2d at 264; *see Zheng*, 355 F.3d at 75 (noting that this factor weighs in favor of joint employment where it "demonstrates effective control of the terms and conditions of the plaintiff's employment").  Plaintiffs contend that, as the owner of KGL, Pan would "direct Employees to perform various tasks," Am. Compl. ¶ 40, and "handle affairs concerning the Restaurant from time to time," *id.* ¶ 39.  As discussed above, however, Plaintiffs have not plausibly alleged that Pan was Plaintiffs' employer or that KGL had formal control.  At best—and assuming that Pan was KGL's agent, which Pan and KGL fairly assert that Plaintiffs do not allege, *see* Mem. at 12-13—Plaintiffs' allegations indicate only a limited degree of supervision; they do not assert control over the terms and conditions of Plaintiffs' employment.  *See, e.g.*, *Cucul*, 2024 WL 2783505, at \*12 (finding that the plaintiffs, who were hired by restaurants to clean, had not adequately alleged the fifth *Zheng* factor against the restaurants where the plaintiffs had not shown "control over" the plaintiffs' "day-to-day schedule and work conditions").

As for the sixth *Zheng* factor, Plaintiffs do not state "whether plaintiffs worked exclusively or predominantly" for KGL.  *Zheng*, 355 F.3d at 72.  Here, as well, the Amended Complaint asserts only that KGL is "a company that owns the piece of real property . . . where the Restaurant is located," Am. Compl. ¶ 37, and that Plaintiffs were "required" to do different tasks on the property, including cleaning and repairs, *id.* ¶ 40.  From these limited allegations, the Court cannot conclude

that Plaintiffs have plausibly alleged this factor either.  Here, too, Plaintiffs do not advance any argument relating to this factor in their Opposition, *see* Opp'n at 6-7, which the Court views as a concession.  *See, e.g.*, *Yeh*, 2019 WL 633355, at \*7; *cf. Malik*, 841 F. App'x at 284.

In sum, only the first *Zheng* factor weighs in Plaintiffs' favor, while the remaining factors are either implausibly pled or weigh against them.  The mere fact that the Restaurant is located within the real property owned in part by KGL does not equate to a plausible allegation that KGL was Plaintiffs' employer, *see, e.g.*, *Nieto*, 2017 WL 4539327, at \*3, nor do Plaintiffs cite any authority indicating as much, *see* Opp'n at 6.  Indeed, sweeping liability of that sort, in which landlords necessarily take on the FLSA liability of their tenants, does not comport with the economic reality at play.

Accordingly, Plaintiffs have not shown that KGL had functional control.

### 3.  Single Integrated Enterprise

Lastly, Plaintiffs attempt to argue that Pan and KGL operated as a "single integrated enterprise" alongside the other Defendants, Opp'n at 9-11, however this argument, too, fails to state a claim.  Beyond the formal and functional control analyses put forward by the Second Circuit, another set of factors district courts in this Circuit consider when analyzing whether persons qualify as "employers" under the FLSA pertains to whether those persons operate as a single integrated enterprise.  *Huer Huang*, 459 F. Supp. 3d at 586.  This analysis assesses whether there is "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Id.* (quoting *Apolinar v. R.J. 49 Rest., LLC*, 15-cv-8655 (KBF), 2016 WL 2903278, at \*4 (S.D.N.Y. May 18, 2016)).

Pan and KGL correctly note that the Second Circuit has not formally adopted these factors in the context of the FLSA.  *See* Mem. at 14-15.  Rather, the doctrine developed within the context

of collective bargaining, *see Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996), and has been extended to other labor and employment contexts since then, *see, e.g.*, *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (involving Title VII of the Civil Rights Act).  While some courts have declined to apply this theory of liability as a result, *see, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 n.16 (S.D.N.Y. 2013), district courts in this Circuit have increasingly applied it in FLSA cases, *see, e.g.*, *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (collecting cases), and, in a recent summary order, the Second Circuit referred to this theory in the context of the FLSA, *see Perez Perez v. Escobar Constr., Inc.*, 23-1240-cv, 2024 WL 3594325, at *4 (2d Cir. July 31, 2024).

Applying the theory here, Plaintiffs' allegations are inadequate.  Rote recital of the elements of a single integrated enterprise is insufficient to state a claim upon which relief may be granted.  *See Huer Huang*, 459 F. Supp. 3d at 588 (collecting cases).  Yet, here, Plaintiffs do just that: they state that Maxim, Phoenix Trading, Zen Ramen Inc., and KGL functioned as a single-integrated enterprise who "pa[id] Plaintiffs as the shareholders/members/owners of the enterprise, advertise[d] . . . as an enterprise, and [were] otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and [were] co-owned by the same people."  Am. Compl. ¶ 38.  The Amended Complaint lacks factual detail substantiating these allegations.  *See, e.g.*, *Huer Huang*, 459 F. Supp. 3d at 588 (concluding that the plaintiffs' "allegations mirror[ed], and [did] not add factual content to" the requisite elements).

Plaintiffs' arguments to the contrary are unavailing.  They contend that they have adequately alleged the first ("interrelation of operations") and second ("centralized control of labor relations") prongs, *Huer Huang*, 459 F. Supp. 3d at 586, by explaining that "Pan directed the Restaurant's employees to perform work for the benefit of KGL," Opp'n at 10 (citing Am. Compl.

21

¶ 40). And they assert that they have adequately alleged the third ("common management") and fourth ("common ownership or financial control") prongs, *Huer Huang*, 459 F. Supp. 3d at 586, by discussing how Lin and Pan were married and how "Lin would often handle affairs concerning the [real property]" while "Pan would also handle affairs concerning the Restaurant from time to time," Opp'n at 10 (quoting Am. Compl. ¶¶ 38-39).

Even so, Plaintiffs' allegations regarding Pan and KGL are vague and conclusory, as discussed at length above. They do not plausibly answer the key question of whether the "alleged employer possessed the power to control the workers in question." *Huer Huang*, 459 F. Supp. 3d at 590 (quoting *Herman*, 172 F.3d at 139). That Lin and Pan were purportedly married does not overcome this obstacle, *see Lopez v. Acme Am. Env't Co.*, 12 Civ. 511(WHP), 2012 WL 6062501, at \*4 (S.D.N.Y. Dec. 6, 2012) ("Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees.") (S.D.N.Y. Dec. 6, 2012), nor do Plaintiffs cite any authority for this inferential leap, *see* Opp'n at 9-11. Further, the fact that the Restaurant, Pan, and KGL purportedly shared employees, while relevant, is not decisive. *See, e.g.*, *Kwan v. Sahara Dreams Co. II Inc.*, 17-CV-4058(RA), 2018 WL 6655607, at \*4 (S.D.N.Y. Dec. 19, 2018) ("The allegation that the Dream Hotel Group 'transfers employees between hotels' is alone insufficient to draw an inference of centralized control, particularly because Plaintiff herself worked at only one location and the Amended Complaint nowhere alleges that the Corporate Defendants treated their employees interchangeably or subjected them to the same policies."); *see also Barfield*, 537 F.3d at 141-42 ("[T]his court has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.").

22

Moreover, this case stands in stark contrast to cases in which courts have determined that plaintiffs have plausibly alleged a single integrated enterprise. For example, in *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 558-59 (S.D.N.Y. 2015), the court determined that a single integrated enterprise had been plausibly alleged where, among other things, there were detailed factual allegations that four restaurants shared a single CEO and office managers who were extensively involved in the hiring, pay, and supervision of the delivery people, that a single set of records were kept for all of the delivery people across all four locations, and that the four locations shared a website and single menu. Similarly, in *Bravo v. Established Burger One LLC*, the court concluded that a single integrated enterprise was plausibly alleged where five restaurant locations "jointly advertised on the website[,] . . . marketed the restaurants as one entity, used the same menus at all the locations, moved employees and food among the restaurants, . . . paid the employees using the same payroll methods from a central office," and had a common manager. 12 Civ. 9044(CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013). This case, however, is more like *Nieto v. Village Red Restaurant Corp*, discussed above, where a restaurant worker's claims against a realty company that owned the building in which the restaurant operated "simply [did] not provide enough detail to infer that there was a single, integrated enterprise." 2017 WL 4539327, at *3. There, the plaintiffs solely recited the elements, supplemented by limited information "showing some common management and ownership [but] demonstrat[ing] nothing about how the two companies are integrated or operated as one entity." *Id.*

Accordingly, the Court grants Pan and KGL's motion to dismiss Plaintiffs' FLSA claims (Counts 1, 3, and 9) against Pan and KGL.

**B. The Court Elects to Exercise Supplemental Jurisdiction over Plaintiff's Remaining State-Law Claims.**

Next, Pan and KGL urge the Court not to exercise supplemental jurisdiction over the Amended Complaint's remaining state-law claims (Counts 2, 4-8, 10-18); however, if the Court were to consider these claims, they argue that the Amended Complaint fails to plausibly state claims for relief. *See* Mem. at 26-39. Regarding the fraudulent transfer claim (Count 16), in particular, Pan and KGL argue that there is no "common nucleus of operative fact" to justify the exercise of the Court's supplemental jurisdiction. *Id.* at 37 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). In response, Plaintiffs counter that exercising supplemental jurisdiction over their fraudulent transfer claim is appropriate because "the operative fraudulent transactions clearly arise from the same events." Opp'n at 27.

The Court will exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. "In any civil action of which the district courts have original jurisdiction," 28 U.S.C. § 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "[C]laims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)); *see Gibbs*, 383 U.S. at 725. Here, Plaintiffs' state-law claims—under the NYLL (Counts 2, 4-8, 10-13, 15), the UVTA and DCL (Count 16), and under the common law (Counts 14, 17-18)—all arise out of Plaintiffs' employment at the same Restaurant and concern the same policies and practices. *See, e.g.*, *Shahriar*, 659 F.3d at 245 (concluding that NYLL and FLSA claims "clearly derive[d] from such a common nucleus of operative facts since they arise out of the same compensation policies

and practices"); *Zhang v. Fam. Wu, 1 LLC*, 19-cv-5723 (CBA) (RML), 2022 WL 872571, at *3 (E.D.N.Y. Mar. 24, 2022) (determining that supplemental jurisdiction over the plaintiffs' DCL claims were proper in an FLSA and NYLL case because if the plaintiffs won in that action there would "be a judgment to collect" and plaintiffs alleged that the transfers were made with the intent to hinder that recovery (citing *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)); *Ji v. New Aily Foot Relax Station Inc.*, 22 CV 8196 (VB), 2023 WL 3570611, at *6 (S.D.N.Y. May 19, 2023) (similarly determining that supplemental jurisdiction was proper in a case alleging a DCL claim, in addition to FLSA and NYLL claims, where the plaintiff alleged that defendants had fraudulently transferred assets to successor companies to make themselves judgment proof); *cf. He v. China New Star Rest., Inc.*, 19-CV-5907 (PKC) (CLP), 2020 WL 6202423, at *3 (E.D.N.Y. Oct. 22, 2020) (determining that the court properly had jurisdiction over DCL claims, in addition to FLSA and NYLL claims, because the plaintiff argued "that he may be hindered from collecting on any judgment issued in his FLSA and NYLL action" where defendants had allegedly transferred properties to family members).

Pan and KGL's arguments to the contrary are unavailing.  Focusing on the fraudulent transfer claim, in particular,[9] Pan and KGL assert that the Amended Complaint does not plausibly allege fraudulent transfer and relies on different evidence from the FLSA claims.  *See* Mem. at 37-38.  When distinguishing *Zhang*, Pan and KGL argue that, unlike this case, that case alleged that the transferee defendants "received assets directly from the FLSA employer in order to evade wage liability."  *Id.* at 38.  While the Court agrees that Plaintiffs have not plausibly alleged that Pan and KGL are employers under the FLSA, the Court disagrees with the notion that, as a result, Plaintiffs'

---

[9] Beyond arguing that this Court should not exercise supplemental jurisdiction due to Plaintiffs' failure to plead an FLSA claim, Pan and KGL do not challenge the Court's exercise of supplemental jurisdiction on any other state-law claim brought by Plaintiffs.  *See* Mem. at 36-38.  The Court construes this omission as a concession that Plaintiffs' other state-law claims do share a common nucleus of operative fact.

fraudulent transfer claim necessarily shares "no operative facts," *id.*, with the FLSA claims over which the Court has original jurisdiction. As the *Zhang* court explained, "if the Plaintiffs prevail in this action and prove liability under the FLSA and the NYLL, there will be a judgment to collect in this case," 2022 WL 872571, at *3, and, like the plaintiffs there, Plaintiffs here have alleged that the Lin, Jin, Maxim, and Phoenix "transferr[ed] substantially all of their assets" to Pan, KGL, Feng, and Zen Ramen Inc. "in an attempt to defraud potential creditors" and hinder Plaintiffs' recovery, Am. Compl. ¶ 163; *see* Am. Compl. ¶¶ 161-77. Whether Plaintiffs have plausibly stated a claim for fraudulent transfer is a separate question, which the Court will address below.

Moreover, exercising supplemental jurisdiction here would comport with the values of judicial economy, convenience, fairness, and comity. Where 28 U.S.C. § 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). 28 U.S.C. § 1367(c)(3) provides, among other grounds, that district courts "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having determined that Plaintiffs fail to state a claim under the FLSA, the Court has dismissed "all claims over which it has original federal jurisdiction." *Id.* Thus, the Court goes on to assess "the values of judicial economy, convenience, fairness, and comity." *Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Here, exercising supplemental jurisdiction would promote the values of judicial economy and convenience, in particular, because Plaintiffs' claims against the other named Defendants, namely, Jin; Lin; Maxim; Phoenix; Zen Ramen, Inc.; and Feng, are proceeding in federal court. Requiring Plaintiffs to bring a parallel action in a different forum, which would likely involve duplicative

26

efforts by the litigants and the courts, would thus be inefficient and inconvenient. *See, e.g.*, *Shahriar*, 659 F.3d at 250 n.9 (noting that it "would be error" to decline supplemental jurisdiction in an FLSA and NYLL in part because "requiring plaintiffs to bring a separate action in state court to assert their state law claims would result in duplicative litigation").

Accordingly, the Court denies Pan and KGL's request for this Court to decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims (Counts 2, 4-8, 10-18).

### C. Plaintiffs Fail to State Claims for Relief Against Pan and KGL Under State Law.

Having determined that it will exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims (Counts 2, 4-8, 10-18), the Court now moves on to consider whether Plaintiffs have plausibly stated claims for relief under state law.

### 1. Plaintiffs Do Not State Plausible Claims for Relief Against Pan and KGL Under the NYLL.

Beginning with Plaintiffs' claims under the NYLL (Counts 2, 4-8, 10-13, 15), Pan and KGL argue that Plaintiffs fail to state a claim under the NYLL for the same reasons articulated in relation to the FLSA. *See* Mem. at 8-25. Although Plaintiffs do not squarely address the NYLL, they presumably oppose those arguments for the same reasons they oppose Pan and KGL's arguments under the FLSA. *See* Opp'n at 5-14.

Plaintiffs fail to state a claim against Pan and KGL under the NYLL. Like the FLSA, the NYLL requires a showing that the person sued is an "employer" under the statute. *Yu v. Mask Pot, Inc.*, 241 N.Y.S.3d 323, 328 (2d Dep't 2025). The NYLL also defines "employer" and "employed" broadly: an "employer" is, relevant here, "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. LAB. LAW §§ 190(3), 651(6). "[E]mployed" means that a person is "permitted or suffered to work." *Id.* § 2(7). Although the New York Court of Appeals has not yet resolved whether the

FLSA and NYLL are to be interpreted coextensively, the New York Appellate Division and courts in this Circuit have assumed, due to an absence of case law to the contrary, that they are. *See, e.g.*, *Tapia*, 906 F.3d at 61 n.1 ("For purposes of this appeal, we assume, without deciding, that 'the tests for "employer" status are the same under the FLSA and the NYLL . . . .'" (quoting *Irizarry*, 722 F.3d at 117)); *Yu*, 241 N.Y.S.3d at 328 ("Because the Labor Law 'uses a nearly identical definition of the term employer' as the FLSA, this Court will 'interpret[] the definition of employer under the [Labor Law] coextensively with the definition used by the FLSA.'"); *see also, e.g.*, *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 132 n.19 (S.D.N.Y. 2020) (collecting cases). As such, Plaintiffs have not established that Pan and KGL are employers under the NYLL for the same reasons discussed above with respect to the FLSA.

Accordingly, the Court grants Pan and KGL's motion to dismiss Plaintiffs' NYLL claims (Counts 2, 4-8, 10-13, 15) against Pan and KGL.

### 2. Plaintiffs Fail to State a Claim for Breach of Contract Against Pan and KGL.

Next, the Court considers whether Plaintiffs have stated a claim for breach of contract on behalf of Wu and Tan against Pan and KGL (Count 14). In their Motion, Pan and KGL argue that Plaintiffs have failed to state a claim for breach of contract against them because Pan and KGL are not parties to Wu's and Tan's employment contracts. Mem. at 26. Notably, Plaintiffs do not oppose this argument. *See* Opp'n at 5-29.

Plaintiffs have failed to state a claim for breach of Wu's and Tan's employment contracts against Pan and KGL. Under New York law, it is axiomatic that "[l]iability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties." *CDJ Builders Corp. v. Hudson Grp. Constr. Corp.*, 889 N.Y.S.2d 64, 65 (2d Dep't 2009) (quoting *Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 111 (2d Dep't 2009)); *cf. Equal*

*Emp. Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). *See generally* 28 GLEN BANKS, NEW YORK PRACTICE SERIES - NEW YORK CONTRACT LAW § 8:19 (2025). Here, Plaintiffs have put forward no such allegations. As Pan and KGL assert, the Amended Complaint focuses on Wu, Tan, and the "Restaurant Defendants"[10] as the contracting parties, not Pan and KGL. Mem. at 26 (quoting Am. Compl. ¶¶ 134, 149). With respect to Wu, the Amended Complaint alleges: "Throughout his employment, Plaintiff Wu and Restaurant Defendants had an agreement whereby Plaintiff Wu was promised one week of paid vacation per year, which Restaurant Defendants refused to give him." Am. Compl. ¶ 134. And with respect to Tan, the Amended Complaint similarly asserts: "Throughout his employment, Plaintiff Tan and Restaurant Defendants had an agreement whereby Plaintiff Tan was promised one week of paid vacation per year, which Defendants refused to give him." *Id.* ¶ 149. While there is some slippage in terms between the "Restaurant Defendants" and "Defendants," *see also id.* ¶¶ 250-52 (alleging Claim 14 for breach of contract), the Amended Complaint makes no specific mention of the Pan, KGL, or the "Transfer Defendants," as it refers to them (in conjunction with Feng and Zen Ramen Inc.),[11] and it advances no plausible contention that Pan and KGL could have otherwise been bound by those contracts, such as by assumption or assignment. Plaintiffs fail to respond to this argument altogether, as well, which the Court construes as a concession.

Accordingly, the Court grants Pan and KGL's motion to dismiss Plaintiffs' breach-of-contract claim (Count 14) against Pan and KGL.

---

[10] The Amended Complaint defines "Restaurant Defendants" as including Maxim, Zen Ramen Inc., Phoenix, Lin, and Jin. Am. Compl. at 1-2.

[11] The Amended Complaint defines "Transfer Defendants" as including Feng, Pan, KGL, and Zen Ramen Inc. Am. Compl. at 1-2. "Defendants" is defined as including both Restaurant Defendants and Transfer Defendants. *Id.*

### 3.   Plaintiffs Fail to State a Claim for Fraudulent Transfer Against Pan and KGL.

Next, Pan and KGL argue that Plaintiffs fail to state an actual or constructive fraudulent transfer claim by offering "only conclusory assertions that merely recite the legal standard." Mem. at 29.  With respect to Plaintiffs' actual fraudulent transfer claim, Pan and KGL further assert that these allegations "fall[] far short of [Federal Rule of Civil Procedure 9(b)]'s heightened pleading standard." *Id.* at 33.  In response, Plaintiffs contend that Pan and KGL conflate the DCL and UVTA and argue that they have plausibly asserted constructive fraudulent transfer. Opp'n at 14-24.  Plaintiffs further dispute the applicability of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), however, were it to apply, they contend that the Amended Complaint satisfies its requirements.[12]

### a.   Actual Fraudulent Transfer

Beginning with actual fraudulent transfer, Plaintiffs fail to plausibly state a claim against Pan and KGL.  Actual fraudulent transfer under the old DCL and new DCL are substantially the same. *See Anhui Aido Garment Co. v. Stern*, 24-cv-1572 (JGK), 2025 WL 1663860, at *7 (S.D.N.Y. June 12, 2025) (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)). *See generally* 4F ROBERT L. HAIG, NEW YORK PRACTICE SERIES – COMMERCIAL LITIGATION IN NEW YORK STATE COURTS § 129:8 (5th ed. 2025).  The old DCL provided that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present

---

[12] As a threshold issue, New York's fraudulent transfer statute recently changed.  On December 6, 2019, then-Governor Andrew Cuomo signed into law legislation modeled off of the Uniform Voidable Transactions Act, which "took effect on April 4, 2020, and applies to all transactions that occur after that date." 4F ROBERT L. HAIG, NEW YORK PRACTICE SERIES – COMMERCIAL LITIGATION IN NEW YORK STATE COURTS § 129:5 (5th ed. 2025); *see Rosenfeld v. Brody*, 236 N.Y.S.3d 191, 195 (2d Dep't 2025).  *See generally* 2019 N.Y. Sess. Laws A. 5622 (McKinney).  That enactment revised the fraudulent transfer causes of action, although substantially similar provisions remain. 4F ROBERT L. HAIG, NEW YORK PRACTICE SERIES – COMMERCIAL LITIGATION IN NEW YORK STATE COURTS § 129:8 (5th ed. 2025).  Accordingly, the Court refers to the law as it existed prior to April 4, 2020, as the "old DCL" and the law after the new enactment took effect on April 4, 2020, as the "new DCL."

and future creditors," N.Y. DEBT. & CRED. L. § 276 (McKinney 2020), whereas the new DCL

provides that

> (a) [a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . . (1) with actual intent to hinder, delay or defraud any creditor of the debtor,"

N.Y. DEBT. & CRED. L. § 273(a)(1) (McKinney 2026).

Under Rule 9(b), a complaint asserting actual fraudulent transfer must "state with particularity the circumstances constituting fraud or mistake." *Ray v. Ray*, 799 F. App'x 29, 31 (2d Cir. 2020) (quoting FED. R. CIV. P. 9(b)). "Although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002) (noting the "particulars" required in a fraudulent transfer claim include information such as "the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, or the consideration paid").

"Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud,'" in other words, "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Ray*, 799 F. App'x at 32 (quoting *Sharp*, 403 F.3d at 56). Those "badges of fraud" may include, among other things, "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." *Id.* (quoting *Wall St. Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 249 (1st Dep't 1999)). Importantly, "the presence of one or more badges of

31

fraud does not necessarily compel the conclusion that a conveyance is fraudulent." *Id.* (quoting *A&M Glob. Mgmt. Corp. v. Northtown Urology Assocs., P.C.*, 983 N.Y.S.2d 368, 377 (4th Dep't 2014)).

Plaintiffs do not meet this standard.  In the Amended Complaint, Plaintiffs allege that two actions were brought against Defendants: one, "[u]pon information and belief, on or around June 2, 2019," Am. Compl. ¶ 161, and another, "[u]pon information and belief, on or around February 13, 2024," *id.* ¶ 169, which purportedly triggered Maxim, Phoenix, Lin, and Jin to transfer substantially all of their assets to Feng, Pan, KGL, and Zen Ramen Inc., *see id.* ¶¶ 161-77.[13]  In the first action, which Plaintiffs contend was filed in the U.S. District Court for the Southern District of New York under the name, "Wang v. Maxim International Group Inc. et al (Case No. 19-cv-05168)," the plaintiffs "brought claims against Defendants pursuant to the FLSA and NYLL, alleging, among other things, that Defendants willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, minimum wage for each hour worked and overtime compensation." *Id.* ¶ 162. "Upon information and belief, during the pendency of the Wang Action," Plaintiffs assert that Defendants "began transferring substantially all of their assets to Transfer Defendants in an attempt to defraud potential creditors." *Id.* ¶ 163. "Upon information and belief, in or around January 2023, a judgment against Defendants was [subsequently] entered in the amount of $261,090.57," *id.* ¶ 167, and "[u]pon information and belief, on or around August 3, 2023, a writ of execution

---

[13] As observed above, on a Rule 12(b)(6) motion to dismiss, the Court is generally limited to the four corners of a plaintiff's complaint.  In addition to filing their Opposition, however, Plaintiffs filed the Xue Declaration, which attaches eleven exhibits, approximately four of which relate to these actions. *See* Xue Decl., Exhibit 2, Dkt. 57-2; Xue Decl., Exhibit 3, Dkt. 57-3; Xue Decl., Exhibit 4, Dkt. 57-4; Xue Decl., Exhibit 5, Dkt. 57-5.  While a federal court may take judicial notice of a document filed in state court "to establish the fact of such litigation and related filings," it may not do so "for the truth of the matters asserted in the other litigation." *FDIC v. Concordia*, 23-CV-7222-LTS-GWG, 2024 WL 4362783, at *2 (S.D.N.Y. Sep. 30, 2024) (quoting *Topalian v. Hartford Life Ins.*, 945 F. Supp. 2d 294, 361 (E.D.N.Y. 2013)).  Thus, the Court merely takes judicial notice of the fact of these litigations and declines to consider them for the truth of the matter asserted therein.

was entered in favor of plaintiff Wang and against Defendants" in the same amount," *id.* ¶ 168. The following year, "[u]pon information and belief, . . . a new class action complaint was filed by Elbert Dawkins on behalf of himself and all other[s] similarly situated against the Restaurant in [this District], bearing Civil Action Number: 1:23-cv-1189." *Id.* ¶ 169.

"Upon information and belief," Plaintiffs assert, "throughout this entire period and until recently, Restaurant Defendants transferred substantially all of their assets to Transfer Defendants." *Id.* ¶ 170. Plaintiffs note that "on multiple occasions in 2023, employees of the Restaurant were directed by Defendants to use the Restaurant's funds to purchase money orders that were used to procure the [real property]" where the Restaurant is located. *Id.* ¶ 171. "[J]ust 5 days after the writ of execution was entered . . . Transfer Defendants purchased the Premises for $6.5 million[]. Upon information and belief," Plaintiffs assert, "the funds utilized "at least partially" comprised "Restaurant Defendants' assets that had been fraudulently transferred to Transfer Defendants over the years." *Id.* ¶ 172. "After this action was commenced and while this action was still pending," Plaintiffs further contend that Maxim and Lin transferred all the assets of the Restaurant to Zen Ramen Inc. and [Feng] in or about February 2025 for no consideration" and without notice. *Id.* ¶ 173. Plaintiffs allege that "Feng and Lin colluded with each other in completing the transfer," *id.* ¶ 174, and that Feng is merely a "nominal owner or minority shareholder of the Restaurant while Lin still enjoyed . . . full control," *id.* ¶ 175. *See also id.* ¶¶ 261-74.[14]

As Pan and KGL rightfully point out, *see* Mem. at 32-34, Plaintiffs' actual fraudulent

---

[14] As mentioned above, Plaintiffs include Zen Ramen Inc. within both "Restaurant Defendants" and "Transfer Defendants." Am. Compl. at 1-2. The Amended Complaint also notes, however, that "Zen Ramen [Inc.] was formed on or about February 10, 2025[,] and took over the operation and control of the Restaurant at or around the same time." *Id.* ¶ 34.

transfer claim as it pertains to them is not particularized. Rather than identify specific fraudulent transfers, specific monetary amounts, specific dates, or specific transferees and transferors, as required by Rule 9(b), Plaintiffs' allegations broadly recite the elements of fraudulent transfer. *See* Am. Compl. ¶¶ 161-77, 261-74.

Where Plaintiffs are more specific, their allegations against Pan and KGL still fail. Plaintiffs lump Pan and KGL into a category of Defendants the "Transfer Defendants," who purportedly received funds at unspecified times within the past seven years, between the commencement of the first litigation "on or around June 2, 2019," *id.* ¶ 161, "until recently," *id.* ¶ 170. They vaguely assert that unspecified Defendants directed Restaurant employees to purchase money orders "for KGL," Opp'n at 15 (quoting Am. Compl. ¶ 264), in unspecified amounts at unspecified times in 2023 that were, in turn, used by unspecified "Transfer Defendants" to purchase the real property the Restaurant is located on five days after a writ of execution was entered against unspecified Defendants. That Pan and Lin are purportedly married, *see* Opp'n at 23-24, arguably does give rise to one badge of fraud, but it alone is not decisive. *Ray*, 799 F. App'x at 32. Together with Plaintiffs' otherwise vague allegations, made largely on the basis of information and belief,[15] these contentions do not raise a strong inference of fraudulent intent as to Pan and KGL. *Compare Granda v. Trujillo*, 18 Civ. 3949 (PAE), 2019 WL 367983, at \*10 (S.D.N.Y. Jan 30, 2019) (finding that the plaintiff failed to satisfy Rule 9(b)'s pleading standard where he failed to specify when a conveyance took place and any allegations about the company

---

[15] Throughout their moving papers, Pan and KGL criticize Plaintiffs for their "repeated reliance on 'information and belief'" assertions. Mem. at 34; *see id.* at 5-6, 21-25, 34-35. In the context of Rule 9(b), "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner*, 902 F.2d at 172. However, "[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* Plaintiffs do not address this argument directly; however, to the extent that they can be understood as opposing it, Plaintiffs still were required to "adduce specific facts supporting a strong inference of fraud," which they have failed to do. *Id.*

34

that the defendant purportedly transferred money to beyond the fact that he controlled it and conveyed funds to it)*, and Alnwick v. Eur. Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 646 (E.D.N.Y. 2003) (concluding that the plaintiffs failed to satisfy Rule 9(b) where they "[did] not identify the assets [that] were allegedly transferred" and where "the date of the alleged transfer, namely on or about 2001, [was] vague and insufficient")*, and Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, 01CIV8871 (JCF), 2002 WL 1144903, at *4 (S.D.N.Y. May 29, 2002) (similarly finding that a complaint failed to plead fraudulent transfer where the "plaintiff [had] not identified what property was allegedly transferred, when, and to whom")*, with Topever Corp. v. ENE Grp. LLC*, 12 CV 869(HB), 2013 WL 822378, at *3 (S.D.N.Y. Mar. 6, 2013) (concluding that the plaintiff had met Rule 9(b) where the second amended complaint alleged that specific details pertaining to the amount transferred "during a specific time period, identifie[d] the individuals involved in the transfer, and allege[d] at least three of the five "badges of fraud").

### b. Constructive Fraudulent Transfer

To the extent that Plaintiffs assert a constructive fraudulent transfer claim against Pan and KGL, it fares no better. The new DCL provision provides two paths to bringing a constructive fraudulent transfer claim depending on whether the creditor is a present or future creditor. For present or future creditors,

> (a) [a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . .

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

35

> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.Y. DEBT. & CRED. L. § 273(a)(2)(i)-(ii) (McKinney 2026).  For present creditors,

> (a) [a] transfer made or obligation incurred by a debtor is [additionally] voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.Y. DEBT. & CRED. L. § 274(a) (McKinney 2026).

The old DCL, by contrast, organized constructive fraudulent transfers by the insolvent, "persons in business," and persons "about to incur debts."  N.Y. DEBT. & CRED. L. §§ 273-75 (McKinney 2020).  For the insolvent, the old DCL stated that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."  *Id.* § 273.  Under that provision, a conveyance is constructively fraudulent where "two separate elements are satisfied: first, 'it is made without "fair consideration,"' and second, 'the transferor is insolvent or will be rendered insolvent by the transfer in question.'"  *United States v. Watts*, 786 F.3d 152, 164 (2d Cir. 2015) (quoting *In re Sharp*, 403 F.3d at 53).  For "persons in business," the old DCL stated that a conveyance is constructively fraudulent when it is made "without fair consideration [and] . . . the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital."  N.Y. DEBT. & CRED. L. § 274 (McKinney 2020).  And, for persons "about to incur debts," the old DCL stated that a conveyance is constructively fraudulent when it is made "without fair consideration [and] . . . the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature."  *Id.* § 275.

36

Here, Plaintiffs fail to establish constructive fraudulent transfer under either version of the DCL.[16] As with Plaintiffs' intentional fraudulent transfer claim, Plaintiffs' constructive fraudulent transfer allegations merely recite the elements without plausible factual support as to Pan and KGL. *See* Am. Compl. ¶¶ 161-77, 261-74. For example, Plaintiffs do not put forward any facts supporting their contention that the $6.5 million purchase of the Restaurant's premises by Pan and KGL was lacking in reasonably equivalent value or consideration. *See Ray*, 799 F. App'x at 31 ("A debtor has received 'fair consideration' if the following three elements are satisfied: 'first, the recipient of the debtor's property must either convey property in exchange or discharge an antecedent debt in exchange; second, such exchange must be a fair equivalent of the property received; and third, such exchange must be in good faith.'" (quoting *Watts*, 786 F.3d at 164)). Instead, they simply state, in broad terms relating to all asserted transfers, that "[t]he transfers were done without sufficient consideration." Am. Compl. ¶ 266. Nor do Plaintiffs offer any facts bolstering their assertion that the purported debtors were insolvent at the time of the transfer or made insolvent by the alleged transfers. N.Y. DEBT. & CRED. L. § 271(a)-(b) (McKinney 2026) ("(a) A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets. (b) A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent . . . ."); N.Y. DEBT. & CRED. L. § 271(1) (McKinney 2020) ("A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."). Instead, they merely state that "Defendants were insolvent when these transfers happened." Am. Compl. ¶ 265. Although not subject to Rule 9(b)'s heightened pleading requirement, these allegations are still insufficient to "nudg[e] th[at]

---

[16] Plaintiffs make much of Pan and KGL's purported failure to move to dismiss on the basis of the UVTA. *See* Opp'n at 16-19. However, that contention is belied by Pan and KGL's motion papers, *see* Mem. at 26-34; Reply at 29-40.

claim[] across the line from conceivable to plausible." *Ray*, 799 F. App'x at 31 (alterations in original) (quoting *Twombly*, 550 U.S. at 570). *Compare Granda*, 2019 WL 367983, at *9 (determining that constructive fraudulent conveyance had not been plausibly alleged where the plaintiff relied heavily on allegations made upon information and belief and did not "buttress[]" his conclusory allegations with "factual allegations")*, and Ray*, 799 F. App'x at 30-31 (concluding that constructive fraudulent conveyance had not been adequately alleged where the complaint contained "little more than a '[t]hreadbare recital[]' of (one of) the statutory elements" and also did not allege, "even superficially," a lack of consideration (alterations in original) (citation omitted) (quoting *Iqbal*, 556 U.S. at 678))*, with Liu v. Chan*, 18-CV-05044(KAM)(SJB), 2020 WL 978857, at *11-12 (E.D.N.Y. Feb. 28, 2020) (determining that constructive and actual fraudulent conveyance had been shown where the amended complaint included allegations of a recorded conversation in which a defendant admitted to transferring assets and that the transfer had left the defendants with nothing).

In response to these arguments, Plaintiffs cite *Gateway I Group v. Park Avenue Physicians, P.C.*, 877 N.Y.S.2d 95 (2d Dep't 2009), for the proposition that, "while some of the allegations are made in portions of the complaint other than the first cause of action, the complaint is to be construed as a whole." Opp'n at 20 (quoting *Gateway I Grp.*, 877 N.Y.S.2d at 100). *Gateway I Group*, however, has no bearing on the above analysis both because the Court does construe Plaintiffs' allegations as a whole, assuming their truth and resolving ambiguities in Plaintiffs' favor, and because *Gateway I Group* otherwise applied New York's motion-to-dismiss standard, which is lower than the plausibility standard applicable in federal court. *Gateway I Grp.*, 877 N.Y.S.2d at 102; *see also Neptune Issue Inc. Profit Sharing Plan v. Eliopoulos*, 245 N.Y.S.3d 642,

38

645-46 (3d Dep't 2025) (discussing the applicable pleading standards); *cf. Williams v. Citigroup Inc.*, 659 F.3d 208, 215 n.4 (2d Cir. 2011) (per curiam) (comparing state and federal standards).

Accordingly, the Court grants Pan and KGL's motion to dismiss Plaintiffs' fraudulent transfer claim (Count 16) against them for failure to state a claim.

### 4. Plaintiffs Fail to State a Claim for Piercing the Corporate Veil.

Next, Pan and KGL argue that Plaintiffs have not stated a claim for piercing the corporate veil because "piercing the corporate veil is not an independent cause of action" and Plaintiffs fail "to identify how any purported domination was used to commit a fraud or wrong that caused Plaintiffs' alleged injury." Mem. at 35. Even if they had articulated domination, Pan and KGL add, "their allegations still fall far short of the factual showing required." *Id.* In response, Plaintiffs assert that the Amended Complaint "specifically alleges that assets were being fraudulently transferred," which they assert "is clearly a specific fraud or wrongdoing . . . that caused [them] injury." Opp'n at 24.

Plaintiffs have failed to state a claim for piercing the corporate veil. Under New York law, "[t]he doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation." *Morris v. N.Y. State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993) (footnote omitted). "The concept is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed," such that it does "not constitute a cause of action independent of that against the corporation." *Id.* "[A] court may pierce the corporate veil where 1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *MAG Portfolio Consult, GMBH*

39

*v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)); *accord Morris*, 623 N.E.2d at 1160-61.

Here, Plaintiffs' allegations fail for two main reasons. As Pan and KGL rightfully point out, *see* Mem. at 35, piercing the corporate veil is not an independent cause of action, *Morris*, 623 N.E.2d at 1160. Because Plaintiffs fail to state, for the reasons discussed above, any other claim in which corporate veil piercing could apply, Plaintiffs' corporate veil-piercing theory of liability must be dismissed. *See, e.g.*, *Ramus v. Bruwer*, 23 Civ. 1770 (JPC), 2026 WL 861505, at *12 (S.D.N.Y. Mar. 30, 2026) (dismissing a corporate veil piercing cause of action where the plaintiff did not plead "an underlying cause of action"); *cf. Ocampo v. 455 Hosp. LLC*, 14-CV-9614 (KMK), 2021 WL 4267388, at *10 (S.D.N.Y. Sep. 20, 2021) ("Courts in the Second Circuit routinely dismiss independent causes of action separately alleging alter ego or veil piercing liability."), *aff'd*, 21-2579-cv, 2022 WL 17684587 (2d Cir. Dec. 15, 2022).

Even if they had stated a claim for which corporate veil-piercing could apply, however, Plaintiffs do not plausibly allege the theory. In the Amended Complaint, Plaintiffs assert two "counts" for piercing the corporate veil, in which they do no more than recite the elements upon information and belief. *See* Am. Compl. ¶¶ 275-293. Indeed, both "counts" are virtually identical but for the substitution of Lin, Jin, and Maxim for Pan and KGL. *Compare id.* ¶¶ 275-84, *with id.* ¶¶ 285-93. These assertions are implausible. *See, e.g.*, *Zimnicki v. Krysiak Constr. Corp.*, 21-CV-4634-RPK-JRC, 2023 WL 7000849, at *8-10 (E.D.N.Y. Aug. 29, 2023) (finding that the plaintiffs failed to allege "any facts in support of their conclusory allegations" for corporate veil piercing in an FLSA matter).

Accordingly, the Court grants Pan and KGL's motion to dismiss Plaintiffs piercing the corporate veil claims (Counts 17 and 18) against Pan and KGL.

40

**5. The Court Grants Plaintiffs Leave to File a Motion to Amend.**

Plaintiffs request leave to amend should the Court dismiss their claims on the basis that they "have sought discovery of information that would amplify the pleadings, which [Maxim, Lin, and Jin] have intentionally withheld." Opp'n at 27.[17] In opposition, Defendants assert that Plaintiffs' request to amend is procedurally improper and fails to advise the court as to how the Amended Complaint's defects would be cured. Reply at 41.

The Court grants Plaintiffs leave to file a motion to amend. A party seeking to amend under Federal Rule of Civil Procedure 15 (a)(2) may do so "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Where a party seeks the court's leave, "[t]he court should freely give [it] when justice so requires." *Id.* This standard is "permissive," consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams*, 659 F.3d at 212-13). Here, Pan and KGL do not consent to Plaintiffs amending the Amended Complaint. But, in keeping with this standard, the Court will allow Plaintiffs to file a motion to amend consistent with this District's Local Rules and this Court's Individual Practices and Rules, should Plaintiffs so choose.

Pan and KGL's arguments to the contrary are unpersuasive. As to the procedural impropriety of Plaintiffs' request, the Second Circuit has explicitly stated that it "will not deem a request for leave to amend insufficient on the basis of form alone." *Loreley*, 797 F.3d at 190. While Pan and KGL correctly raise Plaintiffs' failure to provide an explanation of how they would

---

[17] In support of this argument, Plaintiffs cite five different discovery requests, attached as exhibits to the Xue Declaration. Opp'n at 27-29; *see also* Xue Decl., Exhibit 7, Dkt. 57-7; Xue Decl., Exhibit 8, Dkt. 57-8; Xue Decl., Exhibit 9, Dkt. 57-9; Xue Decl., Exhibit 10, Dkt. 57-10; Xue Decl., Exhibit 11, Dkt. Dkt. 57-11. As stated above, the Court is constrained to the four corners of Plaintiffs' Amended Complaint in resolving the instant Motion and will not venture beyond it. *Chambers*, 282 F.3d at 152-53. Insofar as the Court can discern, Plaintiffs have made no argument that these documents are integral to or incorporated within the Amended Complaint or that the Court could take judicial notice of these materials.

amend, *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (holding that where a party has failed to specify "how amendment would cure the pleading deficiencies in its complaint," leave need not be given), the Second Circuit has simultaneously observed the importance of an opportunity to amend where a dismissal is based on Rule 9(b)'s heightened pleading standard, *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986). Although Plaintiffs have amended once already, they amended their Complaint to add the claims against Pan and KGL, among other reasons, such that the claims against Pan and KGL, in particular, have not been amended before. *See* Order, dated May 30, 2025 (observing that Defendants at that time—Maxim, Lin, and Jin—had consented to the first amendment made by Plaintiffs at that time—Ma, Leung, Chan, and Wu). *Compare* Complaint, *with* Amended Complaint. Although the Court has its doubts as to the futility of any potential amendment and cautions Plaintiffs against conflating plausibility with discovery, *cf. Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (declining to permit a complaint to "proceed through discovery upon the insertion of a single legal conclusion"), the Court nevertheless will provide Plaintiffs with the opportunity to move to amend, consistent with the permissive nature of the rule, *see also Loreley*, 797 F.3d at 190 ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

## CONCLUSION

For the foregoing reasons, Pan and KGL's Motion is granted in part and denied in part, and Plaintiff's claims against Pan and KGL are dismissed.

Plaintiffs are granted leave to move to file an amended complaint by August 21, 2026. Should Plaintiffs seek leave to file an amended complaint, they must do so in conformance with this Court's Individual Practices and Rules and this District's Local Civil Rule 15.1. Defendants

42

may file an opposition to Plaintiffs' motion to file an amended complaint by September 18, 2026, and Plaintiffs may file a reply, if any, by October 2, 2026.

     SO ORDERED.

                              */s/*
                              ORELIA E. MERCHANT
                              United States District Judge

July 27, 2026
Brooklyn, New York